CITY OF COLORADO SPRINGS, a home rule municipality, Petitioner,

v.

Valerie POWELL, natural parent of decedent, Steven Powell, individually and as next friend and natural parent of James Powell, a minor, Respondent.

No. 01SC87.

Supreme Court of Colorado,
En Banc.

June 17, 2002.

Patricia K. Kelly, City Attorney, Colorado Springs, Colorado, Attorney for Petitioner.

Glenn S. Pressman, Melat, Pressman & Higbie, LLP, Colorado Springs, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

This is our first opportunity to examine a provision of the Colorado Governmental Immunity Act (CGIA) that allows suit for injuries resulting from the operation and maintenance of a sanitation facility. This wrongful death and personal injury action arises out of an accident in Colorado Springs where two brothers fell into a drainage ditch. One brother survived with injuries, the other did not.

We hold that a drainage ditch is a sanitation facility within the meaning of the CGIA. We further outline the extent of the waiver provision. We do not import the design limitation from the dangerous condition provision of the CGIA into the operation and maintenance provision. Furthermore, we do not limit the operation and maintenance provision to acts or omissions that take place within the facility. Following the plain language of the waiver and the definitions provided in the CGIA, we hold that any injury that allegedly results from an act or omission that is connected with the purpose of the facility is sufficient to establish a waiver of immunity.

## I. Facts and Prior Proceedings

Valerie Powell (Powell) brings this action on her own behalf as well as on behalf of her son James and her deceased son Steven. This action arises out of an accident that

occurred when the boys were twelve and five years old, respectively. While Powell was attending a class in a building owned by N.S. Properties, James and Steven played outside, near the building. Their play brought them to the edge of a city drainage ditch. Both boys slipped and fell into the drainage facility. James was able to pull himself out of the facility; Steven's body was later found downstream.

Powell brought negligence claims against both the City of Colorado Springs (the city) and N.S. Properties. The city moved to dismiss Powell's complaint or, in the alternative, for summary judgment, claiming governmental immunity.

Powell argued that either of two provisions of the CGIA permit her to sue. First, section 24–10–106(1)(f) allows suits for injuries resulting from the operation and maintenance of a sanitation facility (operation and maintenance provision). 7 C.R.S. (2001). Second, section 24–10–106(1)(e) allows suits for injuries resulting from a dangerous condition of a sanitation facility (dangerous condition provision). 7 C.R.S. (2001). Powell asserted that the condition of the facility supports a finding that she may sue under either of these provisions. Specifically, she alleged that the ditch itself had steep concrete sides that made escape difficult, the fence protecting the facility had been knocked down, the banks of the facility were muddy and overgrown with bushes, and there were no signs warning of the danger of injury or death.

The trial court agreed that Powell could bring suit. The court held that the operation and maintenance of a facility includes the entire easement associated with the facility and that the "slippery surfaces, edges obscured by overgrowth and shrubbery and destroyed barriers" arose from the operation and maintenance of the facility. Regarding the dangerous condition waiver, the court determined that further discovery was required.

The court of appeals affirmed. *Powell v. City of Colorado Springs,* 25 P.3d 1266 (Colo. App.2000). In a published opinion, the court noted that the "city's negligent failure to maintain the area surrounding the drainage ditch may have contributed to Steven's death

and James' injuries." *Id.* at 1268. The court concluded that this was sufficient for both an operation and maintenance waiver and a dangerous condition waiver. *Id.* We granted certiorari.

## II. Analysis

In Colorado, governmental immunity for tort actions was common-law based. In 1971, this court overruled common law governmental immunity in its entirety. *Evans v. Bd. of County Comm'rs,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. Sch. Dist. No. 1,* 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971). We did so because the waivers to immunity and the exceptions to those waivers had become exceedingly complicated and in many ways arbitrary. *Evans,* 174 Colo. at 101, 482 P.2d at 970. We left it up to the General Assembly to determine the proper parameters of governmental immunity. *Id.* at 105, 482 P.2d at 972. The legislature responded with the CGIA.

■ The CGIA allows injured persons to sue governmental entities in certain specific circumstances. § 24–10–106, 7 C.R.S. (2001). The provisions allowing suit are to be construed broadly, in favor of the injured party. *See Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 227 (Colo.1994). Whether a governmental entity can be sued is a question of subject-matter jurisdiction. *Trinity Broad. of Denver v. City of Westminster,* 848 P.2d 916, 923 (Colo.1993). The injured plaintiff has the burden of establishing that immunity has been waived. *Id.* at 925.

In the current case, Powell alleges she can sue under two provisions of the CGIA. First, she argues that, pursuant to section 24–10–106(1)(f), immunity is waived because the injury resulted from the operation and maintenance of a sanitation facility. This provision details that:

Sovereign immunity is waived by a public entity in an action for injuries resulting from: ....

(f) The operation and maintenance of any public water facility, gas facility, sanitation

facility, electrical facility, power facility, or swimming facility by such public entity. § 24–10–106(1)(f), 7 C.R.S. (2001).

Second, pursuant to section 24–10–106(1)(e), Powell argues that immunity is waived because the injury resulted from the dangerous condition of a sanitation facility. This provision allows suit for injuries resulting from:

> (e) A dangerous condition of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility.

§ 24–10–106(1)(e), 7 C.R.S. (2001).

Because the trial court found that suit was proper under the operation and maintenance provision, we begin our analysis there. We first examine the scope of the term "sanitation facility" and hold that the phrase encompasses the drainage facility at issue here. Second we apply the operation and maintenance provision to the facts alleged in this case. We hold that because Powell has established a nexus between the injuries alleged and the operation and maintenance of the facility, immunity is waived. Because we find that the suit can be maintained under section 24–10–106(1)(f), we do not address a 24–10–106(1)(e), dangerous condition waiver.

### A. Definition of "Sanitation Facility"

■ This is our first opportunity to address the scope of the term "sanitation facility" in the CGIA.[1] The court of appeals, however, has interpreted the phrase "sanitation facility" on a number of occasions. *See Scott v. City of Greeley,* 931 P.2d 525 (Colo.App. 1996); *Smith v. Town of Estes Park,* 944 P.2d 571 (Colo.App.1996); *Burnworth v. Adams County,* 826 P.2d 368 (Colo.App. 1991). In the first of these decisions, *Burnworth,* the court looked to other provisions in the Colorado Revised Statutes in an attempt

to discern the meaning of "sanitation facility." 826 P.2d at 370. After examining the definitions of similar terms, the court concluded that the sanitation facility exception of the CGIA included injuries resulting from the operation and maintenance of a storm drain. *Id.*[2]

In subsequent cases, the court of appeals held that an injury from a storm sewer and an injury from ice accumulation in part of a storm water drainage system were within the ambit of the sanitation facility exception. *Scott,* 931 P.2d 525; *Smith v. Town of Estes Park,* 944 P.2d 571 (Colo.App.1996). We agree with the court of appeals' interpretation of sanitation facility.

■ When construing a statute, we strive to give effect to the intent of the General Assembly. *State v. Nieto,* 993 P.2d 493, 500 (Colo.2000). When a phrase has a plain meaning, or is defined in the statute, we need not resort to rules of statutory interpretation. *Farmers Ins. Exch. v. Bill Boom Inc.,* 961 P.2d 465, 470 (Colo.1998). As a logical corollary, when a phrase is not defined and does not have a plain meaning, we explore other sources. *Nieto,* 993 P.2d at 501.

Because "sanitation facility" is not defined in the CGIA and does not possess a common meaning, we must look outside of the statute to interpret the phrase. *Accord City & County of Denver v. Gallegos,* 916 P.2d 509, 511 (Colo.1996)(concluding that the phrase "public water facility" in section 24–10–106(1)(f) does not have an ordinary meaning). "Sanitation facility" is a technical term and should be construed accordingly. *See* § 2–4–101, 1 C.R.S. (2001)(directing that "phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly"); *Nieto,* 993 P.2d at 500.

Although sanitation facility is not defined, "sanitation district," § 32–1–103(18), 9 C.R.S.

---

1. Before the adoption of the CGIA this court did address governmental immunity for maintenance of a sewer system. *See Cerise v. Fruitvale Water & Sanitation Dist.,* 153 Colo. 31, 384 P.2d 462 (1963)(holding that the water and sanitation district is not immune from suit for an injury caused by a failure to replace a manhole cover).

2. In *City & County of Denver v. Gallegos,* 916 P.2d 509, 511 (Colo.1996), we discussed *Burnworth* without disapproval.

(2001), and "sewerage facilities," § 30–20–401(4), 9 C.R.S. (2001), are. We look to the definitions of these phrases to aid our analysis. *See B.G.'s, Inc. v. Gross,* 23 P.3d 691, 694 (Colo.2001)(noting that other statutes dealing with the same subject is an extrinsic aid to statutory interpretation). A "sanitation district" is defined as a "special district that provides for storm or sanitary sewers, or both, flood and surface drainage, treatment and disposal works and facilities, or solid waste disposal facilities or waste services, and all necessary or proper equipment and appurtenances incident thereto." § 32–1–103(18), 9 C.R.S. (2001). Similarly, "sewerage facilities" are defined as "the various devices used in the collection, treatment, or disposition of sewage or industrial wastes of a liquid nature, or storm, flood, or surface drainage waters, including all inlets, collection, drainage, or disposal lines, intercepting sewers, joint storm and sanitary sewers, sewage disposal plants, and outfall sewers." § 30–20–401(4), 9 C.R.S. (2001).

Because the General Assembly has defined both "sanitation district" and "sewerage facilities" to encompass drainage of raw sewage as well as storm and surface waters, we hold that the term "sanitation facility" encompasses this broad range of functions as well. A broad interpretation of the waiver provisions of the CGIA is appropriate because the CGIA is in derogation of the common law. *Medina v. State,* 35 P.3d 443, 453 (Colo. 2001).[3]

The drainage ditch in this case, a ditch built by and for the city to accommodate storm water runoff, clearly fits this broad definition of sanitation facility.

### B. Application of the Operation and Maintenance Provision

Having outlined the scope of the term "sanitation facility" and concluded that the

drainage ditch in this case falls within the scope of that definition, we now apply section 24–10–106(1)(f) to the facts of this case.

Pursuant to section 24–10–106(1)(f), an injured plaintiff can sue for "injuries resulting from ... [t]he operation and maintenance of any public ... sanitation facility." We must first determine what the concepts "operation" and "maintenance" mean. Operation is defined in the CGIA:

> "Operation" means the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public hospital, jail, or public water, gas, sanitation, power, or swimming facility.

§ 24–10–103(3)(a), 7 C.R.S. (2001).

This broad definition of "operation" includes the concept of "maintenance." Although not defined by the CGIA, the common meaning of maintenance is "the work of keeping a building, machinery, etc. in a state of good repair". *Webster's New World Dictionary of the American Language* 854 (2nd ed.1974). Moreover, in *Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo.1997), this court noted that "maintain" is defined as "keeping a constructed edifice, structure, or improvement in the same general state of being, repair, or efficiency as initially constructed." 934 P.2d at 1385; *see also Medina,* 35 P.3d at 455. Surely repair of a facility is a "power[ ], dut[y], and function[ ]" contemplated by the term "operation."[4]

We must determine, then, if Powell has alleged injuries that resulted from an act or omission of the city that is legally vested in the city regarding the purpose of the ditch. Or, more simply, whether the injuries resulted from something the city did or did not do that is connected with the purpose of the ditch.

---

**3.** To the extent that our pre-CGIA decision in *Cerise,* 153 Colo. 31, 384 P.2d 462, discussed *supra,* is relevant, *see* Comment, *The Colorado Governmental Immunity Act: A Judicial Challenge and the Legislative Response,* 43 U. Colo. L.Rev. 449, 461 (1972)(suggesting that the "sanitation facility" waiver provision may be a codification of the common-law exception of public water and sanitation facilities from immunity),

our interpretation here is consistent with that opinion.

**4.** Thus, like so many terms of art in the law— "willful and wanton conduct," "depraved and malignant heart"—the phrase "operation and maintenance" as used by the CGIA can be a redundancy.

In this case, Powell makes a number of allegations regarding the cause of her sons' injuries. She points to the steep concrete ditch without a means of escape, the absence of signs warning of the danger of injury or death, the fence in disrepair, and the muddy, overgrown banks of the ditch. All of these allegations can be characterized as either inadequate design, or creating an unsafe situation. We discuss each of these in turn.

■ First, Powell claims that the city was negligent in failing to post warning signs that would have alerted passersby to the danger of the ditch. She also contends that the city was negligent in constructing the ditch with steep concrete sides that make it difficult to escape. In support of its assertion that these allegations deal with design flaws, the city submitted an affidavit to the trial court of a city engineer who oversaw the design and construction of the drainage ditch. The engineer noted that the steep concrete sides of the ditch are as designed and that the ditch was not designed to include a fence or warning signs.[5] We agree that both of these allegations take issue with the design of the ditch. Had the ditch been designed with warning signs or with a means of escape, the injuries might have been prevented.

The city does not contest that the design of the ditch is connected with the purpose of the ditch. Rather, it argues, citing *Swieckowski*, that the CGIA limits suit for injuries resulting from design flaws. We disagree.

■ An injured plaintiff cannot sue under the "dangerous condition" provision of the CGIA merely by alleging design flaws. *Swieckowski*, 934 P.2d at 1386. The design exception, however, is an express statutory provision of the CGIA and it only applies to the dangerous condition provision. *See* § 24–10–103(1), 7 C.R.S. (2001) (explicitly excepting design flaws from the statutory definition of "dangerous condition.") By its very terms, the operation and maintenance provision does not require a finding of a dangerous condition. *Compare* § 24–10–106(1)(f), 7 C.R.S. (2001)(allowing suit for an injury resulting from "operation and maintenance of" a sanitation facility), *with* § 24–10–106(1)(e),

7 C.R.S. (2001)(allowing suit for an injury resulting from "a *dangerous condition of*" a sanitation facility)(emphasis added). There is no basis for importing the design limitation from the section 24–10–106(1)(e) dangerous condition provision into the section 24–10–106(1)(f) operation and maintenance provision. Powell's allegations regarding the design of the facility, then, are sufficient to establish a right to sue.

■ Second, Powell alleges that a break in the fence alongside the ditch and the muddy, slippery, and overgrown sides of the ditch led to her sons' injuries. The city asserts that the banks of the ditch are not part of the drainage facility and thus not within the scope of the CGIA provision. We disagree.

The city seeks to narrow the scope of section 24–10–106(1)(f) to negligence regarding the concrete flume through which the water runs. Such a narrow view disregards the reality that areas immediately surrounding a facility often affect the overall condition of the facility. For example, in *Medina*, a case dealing with an immunity waiver for the dangerous condition of a roadway, we reiterated that a "roadway does not exist in the abstract and that therefore existing physical features which are continuous to the roadway are part of the design of the improved roadway." 35 P.3d at 455 (citing *Swieckowski*, 934 P.2d at 1386). Similarly, in *State v. Moldovan*, 842 P.2d 220 (Colo.1992), we refused to limit a governmental immunity waiver to conditions that originated within the actual surface of the roadway. In *Moldovan*, a motorist was injured when a cow gained access to a highway through a hole in a fence adjacent to the highway. In construing the CGIA provision that allows suit for injuries resulting from a dangerous condition on a roadway, we rejected the state's argument that the CGIA provision did not include a condition that was not "an integral part of the highway itself." *Id.* at 222. Also, in *Stephen v. City & County of Denver*, 659 P.2d 666, 668 (Colo.1983), we stated that limiting an immunity waiver "to the physical condition of the road surface gives too

---

**5.** The record is unclear as to when and by whom the fence was erected.

cramped a reading to the statute and ignores the purpose for which this exception to sovereign immunity was created." We noted that such a limited reading "is at odds with the presumption that in enacting the statute a just and reasonable result was intended." *Id.* at 667. Thus we reject the city's contention that the banks of the drainage facility are too attenuated from the facility to establish a right to sue.

The city also argues that although the fence and banks are within its eighty-foot easement, the owners of the land through which the ditch runs, not the city, is responsible. The city asserts that the government would grind to a halt if it were to be liable for the "lawful activities of a landowner." We reject the city's characterization of the inquiry.

As an initial matter, we note that actual liability is not at issue for jurisdictional purposes. "[W]hether the state is immune and whether it is liable are two distinct inquiries." *Medina,* 35 P.3d at 460, n9. Accordingly, at this stage we do not address issues of negligence or causation. *Swieckowski,* 934 P.2d at 1384.

Moreover, Powell does not assert that the city waives immunity for the actions of a third party.[6] Rather, Powell alleges that the city is liable either for failing to maintain the banks of its ditch or through its maintenance of the actual ditch.

A failure to maintain is within the scope of the operation and maintenance provision. The statutory definition of operation clearly includes acts of both commission and omission. § 24–10–103(3)(a); *see also Springer v. City & County of Denver,* 13 P.3d 794, 801 (Colo.2000)(noting that "a public entity may proximately cause a condition not only by affirmatively creating it, but also by its omission in failing to reasonably discover and correct the unsafe condition"); *Stephen,* 659 P.2d 666 (finding a waiver of immunity for failing to re-align a stop-sign).

Powell also alleges that evidence shows that the city may not merely have been negligent in failing to maintain the banks of the ditch, but it may have affirmatively caused the condition. She speculates that in patching a hole in the ditch, the city knocked down a portion of the fence and its trucks muddied the banks of the ditch. Powell highlights evidence that would tend to show that the city was involved in maintenance in the area in which the boys obtained access to the ditch. First, Powell alleges that the fallen fence is next to a portion of the drainage ditch that has a large concrete patch indicating a repair. Second, she alleges that local business owners and workers informed her that they saw the city working in the location of the accident. Lastly, she points to testimony of city employees that they performed periodic inspections of the drainage ditch in the area of the accident and performed maintenance on an as-needed basis.

Unfortunately, the city employee testimony was not obtained until after the trial court order denying the city's motion for dismissal and the trial court failed to determine whether there was evidence of the claim that the city knocked down the fence and muddied the area while maintaining the ditch. Although we could remand for further hearing on this issue, *see Medina,* 35 P.3d at 460–61 (remanding with directions that the trial court hold an evidentiary hearing pursuant to C.R.C.P. 12(b)(1) to further determine whether the CGIA established a right to sue), we need not do so because we find a waiver under other facts in this case. It will be determined at trial whether the city was negligent in failing to maintain the banks of the ditch or whether it affirmatively created that condition of the banks.

### III. Dangerous Condition Provision

Because we find that Powell can sue under the operation and maintenance provision, we need not address Powell's alternate argu-

---

**6.** We have already made clear that the torts of a third party do not usually lead to subject matter jurisdiction against a governmental entity, *See Jenks v. Sullivan,* 826 P.2d 825 (Colo.1992)(find-

ing that there is no right to sue when a third party shoots his estranged wife and her companion in a county courthouse).

ment that suit is permitted under the dangerous condition provision.

### IV. Conclusion

In sum, we find that Powell's claims regarding an unsafe design fit within the provision of the CGIA that allows suit for injuries resulting from the operation and maintenance of a sanitation facility. Moreover, we find that in arguing that the city failed to maintain the banks of the ditch, Powell alleges an act or omission that is within the scope of the waiver. Lastly, there is evidence that the city affirmatively created the condition of the ditch banks in the course of maintaining the facility. This too would be grounds for suit under the CGIA. Thus, we affirm the court of appeals.