2006 WY 145

**CITY OF TORRINGTON, Appellant (Defendant),**

v.

**Bob COTTIER, Appellee (Plaintiff).**

No. 05–267.

Supreme Court of Wyoming.

Nov. 9, 2006.

Representing Appellant: Loyd E. Smith, of Murane & Bostwick, Cheyenne, Wyoming.

Representing Appellee: Michael E. Warren, of Sawyer & Warren, P.C., Torrington, Wyoming.

\* Chief Justice at time of oral argument.

1. The City is responsible for the main sewer lines, also known as trunk lines. Homeowners

Before VOIGT, C.J., and GOLDEN, HILL \*, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Mr. Cottier obtained a judgment against the City of Torrington ("City") after his rental property was damaged by the backup of raw sewage.   The City appeals claiming immunity under the Wyoming Governmental Claims Act. We affirm.

### ISSUE

[¶ 2]   The City presents one issue for review:

> Whether the waiver of governmental immunity for "operation" of public utilities found in W.S. § 1–39–108(a) extends to "maintenance" of public utilities?

Mr. Cottier states the issue as:

> Does the waiver of governmental immunity for the operation of a sewer line, as set forth in W.S. § 1–39–108(a), include the type of maintenance of that line which was involved in this case?

### FACTS

[¶ 3]   On February 25, 2004, sewage backed up into Mr. Cottier's rental property in Torrington, Wyoming causing damage to his property.   Investigation determined that tree roots in the main sewer line caused the back up.   Mr. Cottier filed a formal claim with the City in an attempt to recover damages.[1]   The City denied the claim.   Mr. Cottier then initiated this litigation by filing his complaint on June 29, 2004.   He claimed the damage to his property was caused by the City's negligence.   The City denied negligence and filed a motion for summary judgment asserting, among other things, that Mr. Cottier's claims were precluded by governmental immunity.   The City contended that the waiver of immunity contained in Wyo. Stat. Ann. § 1–39–108(a) applies only to the "operation" of the sewer system and not for negligence in the "maintenance" of that system.   The district court denied the motion as

are responsible for the lines running from their residences to the main or trunk line.

it related to the immunity claim reasoning as follows:

> The Court recognizes that some "maintenance" activities for a sewer system may be different from "operation" of that sewer system. For example, replacement of pipelines *might* be maintenance, but not operation. Perhaps the legislature intended to preserve governmental immunity for those actions. However, other activities are both part of operating and maintaining the sewer system. Checking for and removing tree roots and other obstacles is such an activity. To "operate" the sewer system the [City] must check for and remove obstacles from the sewer lines.

(Emphasis in original.)

[¶ 4] A bench trial was held. The district court found that the City had knowledge of obstructions in the main line near the Cottier property in 2002 and 2003. According to the district court:

> 10. After finding an obstruction a block south of where the Cottier home is located, in the summer of 2003, and because of the backup and the sediment that can be caused from a blockage, it would have been reasonable for the [City], pursuant to its own procedure, to check for obstructions a block north as well.
>
> 11. Tree roots were the cause of the obstruction on July 19, 2002; and those same roots were the cause of the backup on February 25, 2004, one year and seven months later. If those roots had been monitored with periodic jet rodding, the blockage and backup on February 25, 2004, would not have occurred.

The district court determined the City's negligence caused damage to Mr. Cottier's property and entered judgment against the City. This appeal followed.

### STANDARD OF REVIEW

[¶ 5] Resolution of the issue presented in this appeal requires interpretation and application of the Wyoming Governmental Claims Act ("WGCA"), Wyo. Stat. Ann. §§ 1–39–101 *et seq.* (LexisNexis 2003). Statutory interpretation is a question of law, which we review *de novo. Qwest Corp. v.*

*State,* 2006 WY 35, ¶ 8, 130 P.3d 507, 511 (Wyo.2006).

> In interpreting statutes, we primarily determine the legislature's intent. If the language is sufficiently clear, we do not resort to rules of construction. We apply our general rule that we look to the ordinary and obvious meaning of a statute when the language is unambiguous.

We construe together all parts of the statutes *in pari materia,* and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose.

> When the language is not clear or is ambiguous, the court must look to the mischief the statute was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conclusions of law, and other prior and contemporaneous facts and circumstances, making use of the accepted rules of construction to ascertain a legislative intent that is reasonable and consistent.

*Fosler v. Collins (In re Estate of Fosler),* 13 P.3d 686, 688 (Wyo.2000) (internal citations and quotation marks omitted).

### DISCUSSION

[¶ 6] The City contends that Mr. Cottier's claim for damages is precluded by governmental immunity. The City does not challenge the district court's finding that it was negligent. Rather, the City's sole claim is that it is immune from liability under the facts of this case.

[¶ 7] The WGCA is a close-ended tort claims act. *Gibson v. State,* 811 P.2d 726, 728 (Wyo.1991). Unless a claim falls within one of the statutory exceptions to governmental immunity, it will be barred. *Id.* Wyo. Stat. Ann. § 1–39–108 (LexisNexis 2003) provides:

> (a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their

duties in the **operation of public utilities and services** including gas, electricity, water, **solid or liquid waste collection or disposal,** heating and ground transportation.

(b) The liability imposed pursuant to subsection (a) of this section does not include liability for damages resulting from bodily injury, wrongful death or property damage caused by a failure to provide an adequate supply of gas, water, electricity or services as described in subsection (a) of this section.

(Emphasis added.) The City asserts that its negligence in this case relates to its failure to maintain the sewer system. It argues that immunity under Wyo. Stat. Ann. § 1–39–108 is waived only for negligence in the "operation" of a public utility and not for "maintenance." The City contends that if the legislature intended wavier of immunity for maintenance of the sewer system, it would have included the specific term "maintenance" in the statute.

■■■ [¶ 8] Although the City characterizes the issue as one of "maintenance" versus "operation" to determine immunity, we think the proper question is what did the legislature mean by the phrase "operation of a public utility?" [2] "Operation" is not further defined by the statute. When a term is not defined, we will furnish an ordinary and obvious meaning. *Keser v. State,* 706 P.2d 263, 266 (Wyo.1985) ("the plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary"). The American Heritage College Dictionary 975 (4th ed.2004), defines "operation" as the "state of being operative or functional." *See also* Webster's Ninth New Collegiate Dictionary 827 (1991). Black's Law Dictionary 1092 (6th ed.1990), defines "operation" as "the process of operating or mode of action."

[¶ 9] This plain and ordinary meaning of "operation" is consistent with the meaning attributed to the term in the industry. City employees testified that maintenance is included in the operation of the sewer system:

[PLAINTIFF'S COUNSEL] Is one of your main jobs inspecting, cleaning, maintaining sewer line obstructions or sewer lines?

[EMPLOYEE 1] Sewer lines, yes, correct.

[PLAINTIFF'S COUNSEL] Are all these jobs part of the general, overall operation of the sewer system?

[EMPLOYEE 1] Correct.

* * *

[PLAINTIFF'S COUNSEL] And does your job include supervising operation of the town's sewer system?

[EMPLOYEE 2] Yes, it does.

[PLAINTIFF'S COUNSEL] And does the operation of that system include inspection, maintenance, keeping it free from obstructions?

[EMPLOYEE 2] That's part of it.

■■ [¶ 10] We also have recognized that operation of a public utility entails keeping the sewer system free from blockage. For example, in *South Cheyenne Water and Sewer District v. Stundon,* 483 P.2d 240, 241 (Wyo.1971), we acknowledged appellant's concession that, in Wyoming, a municipality is liable for negligence in the operation of its sewer system. We then restated our holding from *Lore v. Town of Douglas,* 355 P.2d 367, 370 (Wyo.1960) that a "municipality is liable ... for failure to exercise ordinary and reasonable care to keep its sewers in repair and free from obstruction." *South Cheyenne Water and Sewer District,* 483 P.2d at 241. Although these cases were decided prior to the enactment of the WGCA, nothing in the WGCA changes the understanding that operation of a public utility requires the sewer lines to be kept free from obstruction. *See In re Estate of Fosler,* 13 P.3d at 689 ("All statutes are presumed to be enacted by the legislature with full knowledge of the existing state of law with reference thereto and statutes are therefore to be construed in harmony with the existing law, and as a part of an overall and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the com-

---

**2.** We have previously determined that enacting an ordinance is not conduct that falls within the waiver of immunity granted by Wyo. Stat. Ann. § 1–39–108(a) for "operation of a public utility." *See Sawyer v. City of Sheridan,* 793 P.2d 476, 478 (Wyo.1990).

mon law and the constitution, but also with reference to the decisions of the courts.").

[¶ 11] The City attributes significance to the legislature's use of the term "operation" as opposed to "operation and maintenance" in Wyo. Stat. Ann. § 1–39–108. The City claims that the legislature's intentional selection of the sole term "operation" must be given effect. In support of its position, the City points us to the legislature's use of both terms in another governmental claims statute, Wyo. Stat. Ann. § 1–39–106 (liability in operation or maintenance of buildings, recreation areas and public parks),[3] and to provisions of Chapter 7 (Public Improvements), Title 15 (Cities and Towns) of the Wyoming Statutes.[4] The City also relies on our decision in *Harbel v. Wintermute*, 883 P.2d 359 (Wyo.1994) for its contention that "operation" excludes "maintenance."

[¶ 12] We recognize that "[t]he omission of words from a statute is consid-

ered to be an intentional act by the Legislature, and [we] will not supply words in the process of interpretation." *Fullmer v. Wyoming Employment Sec. Comm'n*, 858 P.2d 1122, 1124 (Wyo.1993). However, by applying the plain and ordinary meaning of the term "operation," we are not inserting words into the statute. "Operation of a public utility" is a broad concept which includes acts required to keep the utility functional. *See, e.g., City of Colorado Springs v. Powell*, 48 P.3d 561, 565 (Colo.2002) (sanitation facility statute uses both "operation" and "maintenance" yet the interpretation of "operation" includes concept of "maintenance"). *See also Holiday Management Co. v. City of Santa Fe*, 94 N.M. 368, 610 P.2d 1197 (1980) (finding waiver of immunity for failure to keep sewer line free from obstruction even though statutory language used the term "operation" rather than "operation and maintenance").[5] A sewer system simply cannot operate if it is permitted to become obstructed or clogged.

3. Wyo. Stat. Ann. § 1–39–106 (LexisNexis 2003) provides:
§ 1–39–106 Liability; buildings, recreation areas and public parks.
A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, recreation area or public park.

4. Wyo. Stat. Ann. § 15–7–405(d) (LexisNexis 2003) provides, in pertinent part, that the superintendent of a board of public utilities shall:
(i) Manage and control the water plant and its distribution system, the sanitary sewer system including sewage disposal plant or plants and the electric utility distribution system;
(ii) Supervise and inspect all parts of the plants and see that they are maintained in good condition for use and that all employees attend to their respective duties;
(iii) Keep in good repair all machinery and other property;
Wyo. Stat. Ann. § 15–7–502(a) (LexisNexis 2003) provides, in pertinent part, that any city or town may:
(iii) Enter into contracts and agreements with other local public bodies covering the joint construction, operation and maintenance of a sewerage system;
(iv) Accept contributions and other aid from commercial, industrial and other establishments to aid in the prevention or abatement of water pollution, and in furtherance of that purpose enter into contracts and agreements with commercial, industrial and other establishments covering the:

. . .
(B) Use and operation by any city or town of sewerage collection, treatment and disposal facilities owned by any commercial, industrial and other establishment;
Wyo. Stat. Ann. § 15–7–701(a)(LexisNexis 2003) provides, in pertinent part:
The governing body of any city or town may grant the right to construct, maintain and operate a system of waterworks within the corporate limits of the city or town to any corporation organized under the laws of Wyoming for that purpose. . . .

5. New Mexico's close-ended governmental claims statute for liability of public utilities is similar to our statute. *See* Lawrence J. Wolfe, Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis*, XV Land & Water L.Rev. 619, 623 (1980) (noting that Wyoming's Governmental Claims Act is similar to the New Mexico Tort Claims Act and that we should turn to it for guidance in interpreting our governmental claims act). It provides:
§ 41–4–8. Liability; public utilities
A. The immunity granted pursuant to Subsection A of Section 4 [41–4–4 NMSA 1978] of the Tort Claims Act [41–4–1 NMSA 1978] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the **operation of the following public utilities** and services: gas; electricity; water; solid or liquid waste collection or disposal; heating; and ground transportation.

Keeping sewage lines free from obstruction is essential to proper operation of a sewage line. *See, e.g., Ely v. Kirk,* 707 P.2d 706, 710 (Wyo.1985) ("a reasonable person would take action to make the system effective from the standpoint of accomplishing its purpose, i.e., delivering sewage to the disposal plant and not to the basements of residences").

[¶ 13] The City's reliance on our decision in *Harbel* is misplaced. In *Harbel,* we were asked to determine what constitutes the "operation of any motor vehicle" pursuant to Wyo. Stat. § 1–39–105, which provides:

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any motor vehicle, aircraft or watercraft.

Mr. Harbel was injured while operating a front-end loader. *Harbel,* 883 P.2d at 361–362. He filed an action against his supervisor and the mechanic, asserting that negligence in supervisory and maintenance obligations are included within the meaning of the terms "operation of a motor vehicle." *Id.* at 362. We disagreed, finding operation of a vehicle distinct from maintenance of a motor vehicle. *Id.* at 365. We concluded that "operation" of the loader could not be imputed to a supervisor or others not in actual physical control of the motor vehicle and held that governmental liability had not been waived under the facts presented. *Id.* at 365, 367. However, the distinction we recognized between "operation" and "maintenance" in the context of motor vehicles and our interpretation of Wyo. Stat. § 1–39–105 is difficult to make in the context of public utilities.

[¶ 14] Wyo. Stat. Ann. § 1–39–108 waives immunity for the negligence of public employees in the operation of public utilities and services including, solid or liquid waste collection or disposal. In other words, the statute waives immunity for negligence in keeping the public utility operable or functional. If an obstruction in the line occurs and is not removed, the sewer lines are no longer functional or operable.

[¶ 15] The WGCA was intended to "afford a remedy to persons injured by negligent public employees, while avoiding the repeated litigation of the question of governmental immunity." *Hamlin v. Transcon Lines,* 701 P.2d 1139, 1144 (Wyo.1985). Prior to the enactment of WGCA, public utilities were liable for acts and omissions similar to those at issue in this case. By enacting Wyo. Stat. Ann. § 1–39–108, the legislature clearly intended for a public utility to be liable in circumstances relating to the operation of a public utility. If keeping the sewer system free from obstruction is not a component of "operation," we are hard pressed to envision any conduct relating to the operation of a sewer system that would result in liability to the governmental entity. Adoption of the reasoning urged by the City would render the intended waiver of immunity under Wyo. Stat. Ann. § 1–39–108 illusory. We must presume "the legislature did not intend futile things." *Hamlin,* 701 P.2d at 1142.

[¶ 16] We find no error in the district court's determination that the City's negligent acts fall within the waiver of immunity provided in Wyo. Stat. Ann. § 1–39–108. Affirmed.

B. The liability imposed pursuant to Subsection A of this section shall not include liability for damages resulting from bodily injury, wrongful death or property damage:

(1) caused by a failure to provide an adequate supply of gas, water, electricity or services as described in Subsection A of this section; or

(2) arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

N.M. Stat. Ann. § 41–4–8 (emphasis added).

We further note that New Mexico has a governmental claims statute relating to public parks and buildings, similar to Wyo. Stat. Ann. § 1–39–106, which uses both "operation" and "maintenance." *See* N.M. Stat. Ann. § 41–4–6. Despite this fact, the New Mexico Supreme Court determined the public utility statute waives immunity for a municipality's negligence in maintaining its sewer system. *Holiday Management Co.,* 610 P.2d at 1197.