The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 12, 2018

## 2018COA97

**No. 16CA1652 Lopez v. City of Grand Junction — Torts —
Negligence; Government — Colorado Governmental Immunity
Act — Immunity and Partial Waiver**

In this negligence case implicating the Colorado Governmental
Immunity Act, a division of the court of appeals applies the
analytical framework of *Springer v. City & Cty. Of Denver*, 13 P.3d
794 (Colo. 2000), to conclude that under section 24-10-106(1)(f),
C.R.S. 2017, a city's immunity may be waived for the operation or
maintenance of a public facility performed by its independent
contractor.

The division here concludes that plaintiffs met their burden to
establish a waiver of immunity as to its negligence claims against
the City of Grand Junction (City) for its independent contractor's
maintenance work on a traffic light. Accordingly, it reverses the

district court's C.R.C.P. 12(b)(1) dismissal of these claims. The division, however, affirms the district court's C.R.C.P. 12(b)(1) dismissal of plaintiff's negligence claims brought against the City regarding its maintenance of a sewer line.

Court of Appeals No. 16CA1652
Mesa County District Court No. 13CV30147
Honorable Brian J. Flynn, Judge

Roberto Lopez, Jordan Pierson, and Kolby Gimmeson,

Plaintiffs-Appellants,

v.

City of Grand Junction, Colorado,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE LICHTENSTEIN
Taubman and Román, JJ., concur

Announced July 12, 2018

Killian Davis, P.C., J. Keith Killian, Damon Davis, Joseph Azbell, Grand
Junction, Colorado, for Plaintiffs-Appellants

Baldwin Morgan & Rider, P.C., Sophia H. Tsai, Kelly L. Kafer, Denver,
Colorado, for Defendant-Appellee

¶ 1     Underground maintenance of a public traffic light in Grand Junction breached a natural gas line.  Leaking gas from the ruptured line migrated to a house, resulting in an explosion and injuries.  As a matter of first impression, we must determine whether section 24-10-106(1)(f), C.R.S. 2017, can be applied to waive the immunity of the City of Grand Junction (City), even though the maintenance of the traffic light was performed by an independent contractor.  We conclude that it can.

¶ 2     Roberto Lopez, Jordan Pierson, and Kolby Gimmeson (plaintiffs) brought negligence claims against the City for their resultant personal injuries and property damage.  Plaintiffs' complaint alleges, among other things, that the City breached its duty of care to safely maintain its utility, electric, and sewer lines.[1]

¶ 3     As pertinent here, the complaint alleges that the City contracted with Apeiron Utility Construction (Apeiron) to upgrade

_____

[1] Plaintiffs' complaint asserted other negligence claims against the City and against other defendants, but those claims are not at issue here.  This appeal challenges only their claims against the City for negligence in maintaining its utility and electric lines for the traffic light (including a vicarious liability theory for its independent contractor's conduct on this project), and for negligence in maintaining its sewer line.

utility lines that powered a traffic light and that during this maintenance project Apeiron ruptured a gas line, and the leaking gas resulted in the house explosion. The complaint alleges that Apeiron's conduct should be imputed to the City.

¶ 4     The City moved to dismiss these negligence claims for lack of jurisdiction under C.R.C.P. 12(b)(1), asserting governmental immunity under the Colorado Governmental Immunity Act (CGIA).

¶ 5     In response, plaintiffs argued that the City had waived its immunity pursuant to section 24-10-106(1)(f). This CGIA provision waives immunity for injuries resulting from the operation and maintenance of any public "sanitation [or] electrical facility." After the district court held a *Trinity* hearing on the motion, it granted the City's motion to dismiss.

¶ 6     Applying the analytical framework of *Springer v. City & County of Denver*, 13 P.3d 794 (Colo. 2000), we conclude that the waiver of immunity under section 24-10-106(1)(f) applies even if the operation or maintenance was performed by a public entity's independent contractor.

¶ 7     Given this conclusion, and based on the facts found by the district court, we further conclude that the plaintiffs met their

burden to establish a waiver of immunity as to the negligence claims against the City for Apeiron's maintenance work on the traffic light. Accordingly, we reverse the district court's C.R.C.P. 12(b)(1) dismissal of these claims for lack of jurisdiction and remand for further proceedings.

¶ 8      However, we affirm the district court's dismissal of plaintiffs' negligence claim against the City as to its operation and maintenance of its sewer line, as plaintiffs' evidence did not support an immunity waiver under section 24-10-106(1)(f).

¶ 9      Because we are reversing the dismissal of two of the negligence claims in the complaint, we deny the City's request for attorney fees.

## I.      Additional Factual Background

¶ 10     Following the *Trinity* hearing, the district court adopted the City's nine-page proposed order of dismissal, which includes the following factual findings.

¶ 11     The City planned to install new electrical lines through an underground conduit to fix a malfunctioning traffic light. The City did not have the personnel or equipment to bore under the road to

place the conduit, so it hired Apeiron to do this underground drilling work.

¶ 12    Before selecting the location to bore the hole, and pursuant to an agreement between the City and Apeiron, Apeiron contacted the various utility owners to mark their utility lines. One of the utility owners, Xcel Energy, hired Safe Site to mark its gas lines. Safe Site marked two gas lines.

¶ 13    Once the utility lines were marked, Apeiron dug potholes to visualize the located utility lines and then began the directional drilling work. As it was drilling the pilot bore across the road, Apeiron's crew foreman felt the drill strike something. He checked with a City employee, and they both determined that they were not aware of any additional utility lines in the area. Apeiron resumed its work. After drilling the pilot bore, Apeiron pulled a larger drill head back that also pulled the new conduit back through the hole. During this process, the drill struck a natural gas line that ran below the two lines located by Safe Site. After this breach, gas leaked into the surrounding ground and also into a sewer main located approximately fifteen to twenty feet away.

¶ 14    There was disputed evidence as to the exact path that the gas travelled to the house, although it was not disputed that gas entered the house through its basement, where there was a nonfunctional toilet and unused shower.  One or both of these had a dry P-trap that allowed the gas into the basement.  The gas ignited and caused an explosion.

¶ 15    The court found that the sewer main was made of a commonly used porous vitrified clay pipe, not intended to keep gases or vegetation in or out.  At the time of the incident, the pipe was intact and in good condition, and the sewer main "was functioning at or near the same efficiency as it had when it was installed."

## II.    The CGIA

¶ 16    The CGIA establishes governmental immunity from suit for public entities and their employees in tort cases, but it also waives immunity in certain circumstances.  *See* § 24-10-106; *Springer*, 13 P.3d at 798, 801 n.5; *see also Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 13.

¶ 17    This statutory scheme serves the purpose of protecting the public against unlimited liability and excessive fiscal burdens, while allowing the common law of negligence to operate against

5

governmental entities *except* to the extent the statute has barred suit against them.  *Walton v. State*, 968 P.2d 636, 643 (Colo. 1998); *see Springer*, 13 P.3d at 803; *see also* § 24-10-102, C.R.S. 2017.

¶ 18    Because governmental immunity from suit derogates the common law of negligence, courts must strictly construe the CGIA provisions that grant immunity.  *Springer*, 13 P.3d at 798; *Walton*, 968 P.2d at 642.  For the same reason, courts must broadly construe the statute's provisions that waive immunity in the interest of compensating victims injured by the negligence of government agents.  *Springer*, 13 P.3d at 798; *Walton*, 968 P.2d at 643.

¶ 19    As pertinent here, a public entity's immunity from negligence claims will be waived for injuries "resulting from . . . [t]he operation and maintenance of any public . . . sanitation [or] electrical facility." § 24-10-106(1)(f).[2]

¶ 20    "Resulting from" is construed broadly to require only a "minimal causal connection" between the injuries and the specified

_____

[2] At the *Trinity* hearing and on appeal, the parties do not dispute that the City's traffic light, conduit, and sewer main are public facilities as contemplated by this waiver provision.

6

conduct. *Tidwell ex rel. Tidwell v. City & Cty. of Denver*, 83 P.3d 75, 86 (Colo. 2003). Because the required showing is minimal, and because discovery before a *Trinity* hearing is limited, the district court should afford a plaintiff the favorable inferences of his allegations and need not reach so far as to determine whether the injuries were "caused by" the specified conduct. *Id.*

¶ 21    "Operation" means "the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purposes of any public" power or sanitation facility. § 24-10-103(3)(a), C.R.S. 2017.

¶ 22    This broad definition of "operation" includes the concept of maintenance. *City of Colorado Springs v. Powell*, 48 P.3d 561, 565 (Colo. 2002). "Maintenance" is defined as "the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure." § 24-10-103(2.5).

III.    *Trinity* Hearing and Standard of Review

¶ 23    If governmental immunity is raised before trial, "the issue is properly addressed pursuant to a C.R.C.P. 12(b)(1) motion to

dismiss" for lack of jurisdiction. *Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo. 2000).

¶ 24     A trial court may hold a hearing and receive any competent evidence pertaining to the motion. *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993). Injured plaintiffs bear the burden of proving the court's subject matter jurisdiction under the CGIA and that immunity has been waived. *Tidwell*, 83 P.3d at 85. Plaintiffs are afforded the reasonable inferences of their evidence supporting a waiver. *Id.*

¶ 25     On review, we defer to the district court's factual findings unless they are clearly erroneous and unsupported by the record. *City & Cty. of Denver v. Dennis*, 2018 CO 37, ¶ 12; *see Walton*, 968 P.2d at 645. Once questions of historical fact are resolved, the question whether a governmental entity is entitled to immunity is one of law, which we review de novo. *Dennis*, ¶ 12.

IV.     Maintenance of the Traffic Light

¶ 26     Plaintiffs contend that the district court erroneously concluded that Apeiron's conduct in maintaining the traffic light was not attributable to the City for purposes of waiving the City's immunity

8

under section 24-10-106(1)(f).  For the reasons that follow, we agree.

### A.    The Conduct at Issue

¶ 27    As an initial matter, we must address the "conduct" that plaintiffs argue is attributable to the City.  The district court's order characterized the plaintiffs' argument as "seek[ing] to impute any act or omission related to locating and marking the gas lines to the City" — an act performed by a third party, Safe Site.

¶ 28    But at the *Trinity* hearing and on appeal, plaintiffs have consistently argued that the conduct at issue was Apeiron's act of striking (and breaching) the natural gas line with a directional drill. We will therefore review plaintiffs' attribution argument as it was argued and with deference to the district court's findings of fact.

¶ 29    As a logical matter, any attribution of Apeiron's conduct to the City will only matter — for purposes of waiver — if the conduct would have waived the City's immunity had the City itself committed this act.

¶ 30    The City's immunity is waived if plaintiffs can show they had injuries "resulting from" the specified conduct.  § 24-10-106(1)(f); *Tidwell*, 83 P.3d at 86.  As noted above, the phrase "resulting from"

9

does not require a showing that the injuries were "caused by" the conduct. *Tidwell*, 83 P.3d at 86. But there must be at least a "minimal causal connection" between the injuries and the specified conduct. *Id.*

¶ 31 At the *Trinity* hearing, the district court found that the City's project involved drilling a bore hole under the road to install a new conduit to hold additional electrical lines for its traffic light. During this project, the drill struck a natural gas line, breaching it. The court found that "it is undisputed that natural gas from the breach got into the sewer main and surrounding ground . . . [and] it is not disputed that the gas entered the home through the basement" and the house then exploded.

¶ 32 Construing the waiver provision broadly, and affording plaintiffs the favorable inferences from these undisputed facts, *see id.*, we conclude the injuries "result[ed] from" the conduct of striking (and breaching) the natural gas line. Thus, this conduct would have waived the City's immunity had the City itself committed this act.

## B.    Attribution of the Conduct

¶ 33    Because Apeiron — not the City — committed this act, we must determine whether its conduct is attributable to the City for purposes of the CGIA waiver.

¶ 34    The operation and maintenance waiver in section 24-10-106(1)(f) does not mention any party except the public entity. Nonetheless, plaintiffs argue that the supreme court, in *Springer*, has already construed a different CGIA waiver provision[3] to encompass the conduct of a public entity's independent contractor *even though* that waiver provision only mentions the public entity. Plaintiffs urge us to similarly construe the operation and maintenance waiver provision.

¶ 35    In *Springer*, the supreme court initially looked beyond the waiver's language to other text in the CGIA, but did not find anything that would preclude the attribution of the independent contractor's conduct to the public entity.  *See* 13 P.3d at 801.[4]

---

[3] The provision at issue was section 24-10-106(1)(c), C.R.S. 2017 (dangerous condition of any public building).

[4] To the extent the City relies on this other text in the CGIA and repeats the same arguments that did not prevail in *Springer*, we reject those arguments.

¶ 36    The court then turned to other means of statutory construction to discern the legislative intent of the waiver provision so it could assess whether that intent is consistent with attributing the independent contractor's conduct to the public entity.

¶ 37    First, it evaluated the waiver's underlying rationale to analyze *why* the public entity lacks immunity. *Id.*; *see* § 2-4-203(1)(a), C.R.S. 2017. Second, it considered the alternative construction if the waiver provision were narrowly construed to apply solely to the acts or omissions of the public entity. *Springer*, 13 P.3d at 801-02; *see* § 2-4-203(1)(e). Third, it evaluated whether an expansive interpretation of the waiver — to attribute the independent contractor's conduct to the public entity — is consistent with the legislative intent to comport with recognized common law negligence principles. *Springer*, 13 P.3d at 802; *see* § 2-4-203(1)(g).

¶ 38    The *Springer* court determined that a public entity lacks immunity because it is responsible for its acts (in creating), as well as its omissions (in failing to reasonably discover and correct), an unsafe condition in a public building. *Springer*, 13 P.3d at 801. Next, it observed that if the waiver were narrowly construed to exclude the acts or omissions of the independent contractor, a

12

public entity could simply avoid responsibility by contracting out its work to others, which would nullify the essential purpose and effect of the waiver. *Id.* at 801-02. Finally, it determined that an expansive reading of the General Assembly's intent — to hold a public entity responsible for the acts of its independent contractor — is consistent with longstanding principles of tort liability. *Id.* at 802 (citing Restatement (Second) of Torts § 422 (Am. Law Inst. 1965)).

¶ 39    Applying this same analytical framework to the operation and maintenance waiver of section 24-10-106(1)(f), we are likewise persuaded that an independent contractor's conduct is attributable to a public entity for purposes of waiving immunity.

¶ 40    As in *Springer*, the underlying rationale for waiving the public entity's immunity from suit is that a public entity is in a position to avoid injury to the public when it engages in a public works project. *See id.* at 801. A public entity, while operating or performing maintenance on a public facility, is liable because it is in a position to avoid creating ("act") or failing to prevent ("omission") a circumstance resulting in injury. *See id.*

13

¶ 41    We are not convinced by the City's argument that the legislature intended a different outcome because the dangerous condition waiver focuses on a "condition," whereas the operation and maintenance waiver focuses on "conduct." Under both waivers, the governmental entity's responsibility to avoid injury to the public stems from its *conduct* while engaging in a public works project. *See* § 24-10-103(1.3) (defining "dangerous condition" to be a physical condition caused "by the negligent *act or omission* of the public entity . . . in constructing or maintaining such facility") (emphasis added); *see also Springer*, 13 P.3d at 799 ("[T]he dangerous condition must be associated with construction or maintenance, not solely design.").

¶ 42    Next, as in *Springer*, the waiver's underlying principle would be nullified if the public entity could escape liability by simply hiring an independent contractor for the operation and maintenance of its public facilities. *See* 13 P.3d at 801-02.

¶ 43    Finally, expansively reading the operation and maintenance waiver to attribute an independent contractor's conduct to a public entity is consistent with common law principles as reflected in the Restatement (Second) of Torts. *See id.* at 802 (supporting its

14

interpretation of the CGIA with "longstanding principles of tort liability").

¶ 44    Generally, a person hiring an independent contractor to perform work is not liable for the negligence of the independent contractor. *Huddleston ex rel. Huddleston v. Union Rural Elec. Ass'n*, 841 P.2d 282, 288 (Colo. 1992). However, there are widely recognized exceptions to this rule. *Id.*

¶ 45    For example, when a public entity retains possession of its premises during the independent contractor's performance of maintenance on those premises, it essentially assumes the role of a landowner. Section 422 of the Restatement provides that the landowner is liable for injuries caused by the negligence of the independent contractor if the landowner retains possession of the land while the work is being done or once the landowner resumes possession of the land upon completion of the work. Restatement (Second) of Torts § 422, Westlaw (database updated June 2018).

¶ 46    Indeed, the *Springer* court relied on section 422 to conclude that attribution of an independent contractor's work to a public entity is consistent with the rationale of the dangerous condition waiver of immunity provisions. 13 P.3d at 802. We perceive the

same consistency with the operation and maintenance waiver. Section 422 is not limited to dangerous conditions, but contemplates a landowner's liability for injuries resulting from other acts or omissions of its independent contractor. *See* Restatement (Second) of Torts § 422 cmt. c.

¶ 47 Other widely recognized common law principles of liability attribute the conduct of the independent contractor to the employer based on the nature of the activity. Here, plaintiffs assert — and the City does not dispute — that the maintenance project involved inherently dangerous activity.

¶ 48 In this vein, we look to the common law principles based on the nature of the activity. Section 427 of the Restatement provides that an employer of an independent contractor is liable for injuries created during work which involves a special danger to others. Restatement (Second) of Torts § 427. Relatedly, section 416 recognizes that an employer of an independent contractor is liable for injuries created during work which creates a "peculiar risk of physical harm to others unless special precautions are taken." *Id.* at § 416.

¶ 49    Thus, expansively reading the operation and maintenance waiver to attribute an independent contractor's conduct to a public entity is consistent with these common law principles. *Springer*, 13 P.3d at 802 ("Where the rationales underlying related legal provisions are consistent, the application of the provisions should likewise be consistent.").

¶ 50    We therefore conclude that a public entity "maintains" a public facility, for purposes of the immunity waiver in section 24-10-106(1)(f), even if it hires an independent contractor to perform the maintenance. Given this conclusion, and based on the district court's findings, plaintiffs met their burden to establish a waiver of immunity as to their negligence claims against the City.

¶ 51    Consequently, we reverse the district court's order dismissing plaintiffs' negligence claims against the City for Apeiron's maintenance work on the traffic light.

V.    The City's Maintenance of the Sewer Main

¶ 52    Plaintiffs next assert that the district court erred when it dismissed their negligence claim against the City as to its operation

and maintenance of its sewer main.[5]  Plaintiffs argue that the explosion and consequent injuries resulted from the City's failure to keep the sewer main in the same general state of repair as when it was initially constructed.  We affirm the district court's dismissal of this claim.

## A. The "Operation and Maintenance" Waiver

¶ 53    Section 24-10-106(1)(f) waives governmental immunity in actions for injuries resulting from the operation and maintenance of a public sanitation facility.  § 24-10-106(1)(f); *Powell*, 48 P.3d at 563.[6]

¶ 54    Immunity is waived if an injury results from a public entity's failure to keep the public facility "in the same general state of being, repair, or efficiency as initially constructed."  § 24-10-103(2.5)

---

[5] The court did not address plaintiffs' argument that the operation and maintenance waiver applied to the City's alleged failure to keep the sewer line in the same state of repair or efficiency.  And the court did not rule on plaintiffs' C.R.C.P. 59 motion, which requested the court to address this issue.  Therefore, by operation of law, the court rejected this argument.  *See* C.R.C.P. 59(j) (any post-trial motion that has not been decided within the allowable time period shall be deemed denied).

[6] A public "sanitation facility" includes the City's sewer main.  § 24-10-103(5.5), C.R.S. 2017 (including structures and related apparatus used in the collection or disposition of sewage of a liquid nature in the definition of public sanitation facility).

(defining maintenance). This determination focuses on what "the city did or did not do that is connected with the purpose of the [facility]." *Powell*, 48 P.3d at 565.

## B. Discussion

¶ 55 Plaintiffs argue that at the time of the explosion, the sewer main was not in the same general state of repair as when it was installed. Over time, plant roots had grown into the sewer main, creating gaps at the joints, which allowed the gas to enter the pipe. Thus, they assert, the City's failure to keep the line free of these invasive roots was a failure to maintain which waived liability under the CGIA.

¶ 56 The district court found that the sewer main was a vitrified clay pipe, and that "vitrified clay pipe is porous and not intended to keep gases or vegetation in or out of the sewer main."

¶ 57 It found that at the time of the explosion

> the sewer main was intact and in good condition. . . . [T]he City had maintained the sewer main, cleaning it approximately every 2.5 years. The main in that area was last cleaned in February 2012, approximately 13 months before this incident. At that time, the main was intact and in good condition.

¶ 58 The court also found that

> [t]he sewer main was installed in the 1940s, and was made of vitrified clay pipe pursuant to the original design for the sewer main. . . . On March 19, 2013 [the day of the explosion], the sewer main was functioning at or near the same efficiency in 2013 as it had [been] when it was installed.

¶ 59 Testimony at the hearing supported these findings. Steven Guillory, the utility engineer for the City, acknowledged there was "some vegetation at some of the joints in the pipe" but agreed the pipe was in the same general state of repair or efficiency as when it was initially constructed:

> [City Attorney]: In your role as utility engineer can you say whether in March of 2013 the sewer main . . . was in the same general state of repair or efficiency as initially constructed?
>
> [Guillory]: Yes, I would say it was.

¶ 60 Similarly, Larry Brown, the maintenance and collections supervisor for the City's wastewater system, testified that he looked at the video of the sewer main and did not remember "much in the way" of vegetation in the line. He testified that the line was in good condition, without any breaks, and that it was "[v]ery clean for a sewer line." When the City's attorney asked him if the sewer main was in the same general state of repair or efficiency as when it was

initially constructed, he testified that it was "fairly close. It looked pretty good."

¶ 61    True, there was conflicting testimony from Zachary Jason, who testified that the sewer was "severely damaged and broken in several areas [because r]oots were penetrating the clay pipe." But the court resolved the evidentiary dispute, finding that the "sewer main was intact and in good condition" and "was functioning at or near the same efficiency in 2013 as it had when it was installed."

¶ 62    Based on this record, we agree with the district court that plaintiffs did not meet their burden to prove a waiver under section 24-10-106(1)(f).

¶ 63    Plaintiffs nonetheless ask this court to remand for further findings because the district court only found that the sewer was in the same general state of efficiency, not the same general state of repair. We decline to do so.

¶ 64    Although the district court's order did not expressly use the words "state of repair," the court found that the City actively maintained the sewer line; it was intact, in good condition, and it functioned as it did when it was installed. *See Powell*, 48 P.3d at

562 (A waiver results from act or omission "connected with the purpose of the facility.").

## VI.    Attorney Fees

¶ 65     The City requests an award of attorney fees pursuant to section 13-17-201, C.R.S. 2017, which mandates an attorney fee award when *an action* is dismissed for lack of subject matter jurisdiction under the CGIA.  *Crandall v. City of Denver*, 238 P.3d 659, 663 (Colo. 2010) (The mandatory language of section 13-17-201 applies to all tort actions, including "CGIA actions dismissed pursuant to a C.R.C.P. 12(b)(1) motion.").  But because we reverse that part of the judgment dismissing the traffic light claims for lack of subject matter jurisdiction, an award of attorney fees is not appropriate.

## VII.   Conclusion

¶ 66     We reverse that part of the judgment dismissing the negligence claims against the City for Apeiron's maintenance work on the traffic light, and the case is remanded to the district court.  We affirm that part of the judgment dismissing plaintiffs' negligence claim against the City as to its operation and maintenance of the sewer main.

JUDGE TAUBMAN and JUDGE ROMÁN concur.