**Judith HENRY–HOBBS,
Plaintiff–Appellee,**

v.

**The CITY OF LONGMONT,
Defendant–Appellant.**

**No. 99CA2231.**

Colorado Court of Appeals,
Div. V.

Jan. 4, 2001.

Certiorari Granted July 2, 2001.

Law Office of Karen Colburn, Robert T. Page, Karen Colburn, Denver, CO, for Plaintiff–Appellee.

Hall Evans, L.L.C., David R. Brougham, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROY.

In this wrongful death action, defendant, the City of Longmont (the City), appeals the trial court's order denying its motion to dismiss the complaint brought by plaintiff, Judith Henry Hobbs.  We affirm.

This action arose from the drowning of plaintiff's ten-year-old son in an irrigation ditch owned by a mutual ditch company, part of which is located within the city limits. The son was tubing in the ditch when he fell off the tube and was trapped underwater. The irrigation ditch was not a natural water course.

Several storm water facilities owned and operated by the City empty into the irrigation ditch. Prior to the accident, the City entered into an agreement with the ditch company, which provided that the City would maintain the portion of the irrigation ditch within the City limits in exchange for the right to discharge excess storm waters, *i.e.,* storm water runoff that exceeds historic flow rates, into the ditch. The agreement required the City to clean the ditch, to remove any trash or obstructions, and to trim weeds and trees to the extent reasonably necessary to maintain the proper operation of the ditch. The City agreed to perform any repairs to the ditch that, individually, cost less than $2,500. The City also agreed to indemnify the ditch company for any damages to third parties caused by the excess storm waters, up to the limits of the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2000. The agreement further provided that the City would reimburse the ditch company for the cost of procuring a liability insurance policy that named the City as an additional insured party.

In addition, the agreement permitted the City to make capital improvements to the ditch if the excess storm water flow necessitated such improvements. The structure where the drowning occurred was constructed by a developer pursuant to the City's requirements and, upon completion and acceptance, was transferred to the City. The structure is incorporated into, and located under, a bridge that carries a city street.

The ditch company owns the irrigation ditch and has the exclusive authority to operate it as an irrigation ditch. That is, the ditch company regulates and measures the flow of irrigation water through the ditch and the distribution of that water to the shareholders of the ditch company, including the City. To the ditch company, the excess storm water is "free water." The City has no control over the excess storm waters once they enter the ditch.

The City moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction under the GIA on the basis that: (1) the occasional discharge of excess storm water into the irrigation ditch did not cause it to be a "sanitation facility" for purposes of § 24–10–106(1)(f), C.R.S.2000; (2) even if the irrigation ditch constituted a "sanitation facility," the drowning did not directly result from the City's operation and maintenance of the ditch, because, according to the City, the ditch was not carrying excess storm waters at the time of the drowning; and (3) a storm water drainage system does not constitute a "sanitation facility" within the meaning of that term under the GIA. The trial court denied the City's motion, and on appeal, the City raises the same arguments.

I.

■ The City first contends that the trial court erred in concluding that the irrigation ditch was a public sanitation facility within the meaning of the GIA. We disagree.

■ Whether a claim falls within an exception to the GIA's waiver of sovereign immunity is a question of subject matter jurisdiction, and, if raised before trial, it appropriately is addressed under C.R.C.P. 12(b)(1). *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). Under C.R.C.P. 12(b)(1), the plaintiff has the burden to prove subject matter jurisdiction. *Capra v. Tucker,* 857 P.2d 1346 (Colo.App.1993).

■ Any factual dispute upon which the existence of jurisdiction may turn is for the trial court, not the jury, to determine. The trial court's factual determination is reviewed under a clear error standard. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

Section 24–10–106(1)(f) waives a public entity's immunity in an action seeking compensation for injuries resulting from the "operation and maintenance of any public ... sanitation facility...." In *Burnworth v. Adams County,* 826 P.2d 368 (Colo.App. 1991), a division of this court held that a storm water drain was a public sanitation facility for purposes of § 24–10–106(1)(f). *See also Smith v. Town of Estes Park,* 944 P.2d 571 (Colo.App.1996).

Here, several of the City's storm water collection facilities were constructed to discharge directly into the irrigation ditch. The

agreement between the City and the ditch company allowed the City to deposit excess storm waters into the ditch in exchange for its maintenance of the ditch within City limits. In addition, the City's use of the ditch relieved it of the expense of constructing its own facilities to carry away any excess storm waters.

In these circumstances, we cannot say that the trial court's conclusion that the irrigation ditch was a sanitation facility within the meaning of the GIA was clearly erroneous.

## II.

We decline the City's invitation to revisit the decision in *Burnworth v. Adams County, supra*, that a storm drainage system is a "sanitation facility" within the meaning of the GIA.

In reaching that decision, a division of this court relied on the definition of "sewerage facilities," prior case law, and the types of facilities that sanitation districts are authorized to provide. The City now argues that, because the definitional sections relied upon in *Burnworth* were not passed until several years after the GIA was enacted, those sections may not be used to construe the meaning of the term "sanitation facility" in the GIA. However, we do not find the *Burnworth* division's use of those definitional sections inappropriate. *See City & County of Denver v. Gallegos*, 916 P.2d 509 (Colo.1996), *overruled in part on other grounds, Corsentino v. Cordova*, 4 P.3d 1082 (Colo.2000). Moreover, we note that the supreme court in *City & County of Denver v. Gallegos, supra*, cited *Burnworth* with approval. Finally, we note that the *Burnworth* decision has been applied three times by divisions of this court. *See Powell v. City of Colorado Springs*, 25 P.3d 1266 (Colo.App.2000); *Scott v. City of Greeley*, 931 P.2d 525 (Colo.App.1996); *Smith v. Town of Estes Park, supra*.

We recognize, as the City argues, that storm drainage systems may not be considered "sanitation systems" by civil engineers or municipalities, who limit the term to facilities that transport waste water. Indeed, sanitation systems and storm drainage systems as defined by civil engineers and municipalities are, and must be, totally separate. However, the previous cases are well established in our jurisprudence, and, in our view, the matter is now best addressed by the General Assembly.

## III.

■ The City next contends that the trial court erred in concluding that, for purposes of the GIA, § 24–10–106(1)(f), the City operated and maintained the irrigation ditch. Again, we disagree.

The City's argument is that the ditch company operates and maintains the irrigation ditch. This argument is based in large part on the ditch company's operation of the head gates, control over the flow and distribution of irrigation water, and maintenance of records. However, we conclude that the City's lack of control over the irrigation water transported in the ditch by the ditch company does not mean that the City did not operate and maintain the ditch as a part of its excess storm water drainage system. Moreover, we note that its operation as an irrigation ditch does not affect the City's use or maintenance of it for the discharge of excess storm waters. *See Smith v. Town of Estes Park, supra*.

## IV.

■ We also reject the City's contention that the trial court erred in refusing to allow evidence that the ditch was not carrying any of the City's excess storm water on the date of the drowning. As the trial court noted, whether the ditch was carrying storm water at the time of the accident was not relevant to the jurisdictional questions of whether it was a sanitation facility and whether the City otherwise operated and maintained it as a sanitation facility. This is correct because, while storm drainage systems only intermittently transport excess storm waters, they are not intermittently storm drainage systems.

■ Additionally, under these circumstances, such evidence goes to the issue of causation, which must be determined by the ultimate factfinder. In determining whether

the GIA presents a jurisdictional bar to suit, the trial court should not address such issues as negligence or causation. *Swieckowski v. City of Fort Collins*, 934 P.2d 1380 (Colo. 1997); *see also* § 24–10–107, C.R.S.2000; *Hendricks v. Weld County School District No. 6*, 895 P.2d 1120 (Colo.App.1995).

The order is affirmed.

RULAND and NIETO, JJ., concur.