CITY OF LONGMONT, Petitioner,

v.

Judith HENRY–HOBBS, Respondent.

No. 01SC88.

Supreme Court of Colorado,
En Banc.

July 1, 2002.

Rehearing Denied Aug. 5, 2002.

David R. Brougham, Hall & Evans, L.L.C., Denver, Colorado, Attorneys for Petitioner.

Karen Colburn, Dean S. Neuwirth, Burke & Neuwirth, Denver, Colorado, Attorneys for Respondent.

Geoffrey T. Wilson, Denver, Colorado, Attorney for Amicus Curiae Colorado Municipal League.

Dan E. Wilson, Grand Junction, Colorado, Attorney for Amicus Curiae City of Grand Junction.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

A young boy drowned while tubing in an irrigation ditch in the City of Longmont. His mother brought a wrongful death action against the city, contending that the ditch was part of the city's water sanitation system. In this case, as in the recent case of *City of Colorado Springs v. Powell*, 48 P.3d 561 (Colo.2002), we apply a provision of the Colorado Governmental Immunity Act (CGIA) that waives immunity for injuries resulting from the operation and maintenance of a sanitation facility.

We hold that the irrigation ditch at issue here is a sanitation facility for the purposes of the CGIA because the city uses the ditch as part of its storm drainage system. Specifically, the city discharges storm water into the ditch, is a shareholder of the ditch company that owns the ditch, and maintains the ditch within city limits.

We further hold that because a sufficient nexus between the death and the operation and maintenance of the facility has been established, the CGIA allows the injured party to maintain a suit against the city.

## II. Facts and Prior Proceedings

This case involves a stretch of a ditch constructed for irrigation which is located within Longmont city limits. A ten year-old boy, Michael Henry, was tubing in this ditch when he slipped off his tube and drowned.

The irrigation ditch is owned by a mutual ditch company of which the city is a shareholder. The city has an agreement with the ditch company that the city will maintain the portion of the ditch within city limits in exchange for the right to empty storm water runoff into the ditch.[1] Several of the city's storm water drains empty into the ditch.

As new residential and recreational areas within the city developed, the city made improvements to the ditch that were needed to accommodate the increased storm water runoff. Where the accident occurred, the ditch was lined in concrete. The city added a four-foot drop within the channel of the ditch designed to slow the velocity of the water (the spillway). The spillway was constructed pursuant to the city's requirements and was transferred to the city upon completion. It is in this spillway that Michael Henry died.

Michael's mother, Judith Henry–Hobbs, brought a wrongful death action against the city and others. She alleged that the defendants "were negligent in failing to maintain the ditch in a manner to prevent injury and failed to warn of the dangers inherent in swimming or tubing in the ditch." She argues that the four-foot drop created a dangerous undertow and that the absence of a protective cage and legible warning signs increased this danger.[2]

The city moved to dismiss Henry–Hobbs's complaint for lack of subject-matter jurisdiction. The city asserted that the CGIA does not permit this suit because the ditch was not a "sanitation facility." The city further asserted that even if the ditch were properly classified as a "sanitation facility," the drowning did not result from the ditch's operation in this capacity.

The trial court held an evidentiary hearing and denied the city's motion to dismiss. The court of appeals affirmed. *Henry–Hobbs v. City of Longmont*, 26 P.3d 533 (Colo.App. 2001), held that the ditch is properly classi-

---

1. The agreement details that the city will clean the ditch, removing any obstructions; trim weeds and trees to the extent needed to maintain proper operation of the ditch; make repairs amounting to less than $2,500 each; indemnify the ditch company for damages caused to third parties by excess storm waters; and pay the cost of listing the city as an additional insured party on the company's liability insurance policy.

2. Although other spillways on the ditch have protective cages restricting access to them, this spillway does not. Furthermore, although the city replaced the signs warning of the danger of the spillway after Michael's death, at the time of the accident, the existing signs were illegible.

fied as a "sanitation facility" because the city uses it to drain storm water runoff. The court further held that the trial court did not err in concluding that the city operated and maintained the ditch. We affirm.

### III. Analysis

In *Powell*, we discussed the history and the current status of governmental immunity, 48 P.3d at 563–64, and thus will not repeat it here. Suffice it to say that an injured person may sue the government in tort if there is a specific waiver of immunity in the CGIA. *Id.* at 563–64.

▮▮▮▮ The injured party has the burden of proving subject-matter jurisdiction. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 925 (Colo.1993). In an appeal from a trial court's governmental immunity determination, the reviewing court employs a highly deferential standard of review. *Id.* In *Medina v. State*, we noted that if the underlying facts are undisputed, then the trial court's jurisdictional determination is purely a question of law and the appellate review is de novo. 35 P.3d 443, 452–53 (Colo. 2001). In the current case, however, there were many disputed questions of fact; the trial court held a *Trinity* hearing to resolve these. Accordingly, we apply a deferential standard of review.

Here, Henry–Hobbs asserts that immunity has been waived under section 24–10–106(1)(f) of the CGIA. Relevant to this case, that provision waives immunity for injuries "resulting from . . . [t]he operation and maintenance of . . . [a] sanitation facility." § 24–10–106(1)(f), 7 C.R.S. (2001).[3] The city advances essentially two arguments as to why the sanitation facility waiver does not apply to the facts of this case. First, the city claims that the ditch is not a sanitation facility because it is privately owned and only carries storm water periodically. Second, the city argues that even if the ditch is a sanitation facility, immunity has not been waived because the injury did not result from

the operation and maintenance of the ditch. The trial court and the court of appeals rejected both these arguments. We affirm.

We first examine the term "sanitation facility" as defined in our recent decision, *Powell*, and conclude that the irrigation ditch at issue here is properly categorized as a sanitation facility for the purposes of the CGIA. Second, we apply the waiver contained in section 24–10–106(1)(f) and find that Henry–Hobbs has shown sufficient facts that the death resulted from the operation and maintenance of the facility to establish a right to sue.

### A. The Irrigation Ditch is a Sanitation Facility

▮▮▮ In *Powell* we defined the scope of the term "sanitation facility." *Powell*, 48 P.3d at 565. Looking to the definition of similar terms in the Colorado Revised Statutes, and keeping in mind that waivers of immunity are to be broadly construed, we concluded that "sanitation facility" is a broad term that included the drainage ditch built to accommodate storm water runoff that was at issue in *Powell*. *Id.* at 564–65. This conclusion was consistent with *Burnworth v. Adams County*, a case in which the court of appeals held that a storm drain constituted a sanitation facility. 826 P.2d 368, 370 (Colo.App.1991).

The city argues that the ditch at issue here should be excepted from the definition of a sanitation facility because it is privately owned and only occasionally carries storm water. We disagree. Every city must deal with the increased storm water runoff caused by urbanization and the many impermeable surfaces created by development. Longmont uses this ditch to control storm water runoff, just as the City of Colorado Springs used the ditch in *Powell* for the same purpose. Longmont is a part owner of the ditch and maintains the section within its city limits. This is an artificial structure not a naturally flowing stream that occasionally collects storm water. We see no reason to treat Longmont

---

**3.** Section 24–10–106(1)(f) allows an injured party to sue a governmental entity for injuries resulting from the *operation and maintenance* of a sanitation facility. Section 24–10–106(1)(e), on the other hand, allows an injured party to sue a governmental entity for injuries resulting from the *dangerous condition* of a sanitation facility.

Here, Henry–Hobbs alleges a section 24–10–106(1)(f) operation and maintenance waiver of immunity, not a section 24–10–106(1)(e) dangerous condition waiver of immunity. Thus, as in *Powell*, we consider only the operation and maintenance provision and do not address the dangerous condition provision.

differently from Colorado Springs simply because Longmont chose to enter into an ownership and maintenance arrangement with an existing irrigation ditch rather than construct its own ditch. Significantly, the trial court found that the ditch "functions as an integral part of the City's storm drainage system."

■ The fact that the city shares this ditch with others does not allow it to foreclose tort suits allowed by the CGIA. To allow such a loophole surely would defeat the intention of the General Assembly that the CGIA yield "a just and reasonable result." *Stephen v. City & County of Denver*, 659 P.2d 666, 667 (Colo.1983).

We similarly reject the city's argument that even if the ditch is occasionally a sanitation facility, it is not so when storm water is not present. There is nothing in the CGIA or in our case law to suggest that injured persons must trace the origins of water in a ditch to determine if government immunity is waived. We rejected governmental immunity as it had developed at common law because of the many arbitrary and fine line distinctions that had developed. *See Evans v. Bd. of County Comm'rs*, 174 Colo. 97, 100–01, 482 P.2d 968, 969–70 (1971). We refuse to read similar technical distinctions into the CGIA. As the trial court succinctly explained, "[a] facility which fits the definition of sanitation facility because it is a device for the collection of storm water remains a sanitation facility whether or not there is the presence of storm water on a particular occasion."

■ Although the presence or absence of storm water may be relevant to issues of causation and liability, it is not relevant to a determination of subject-matter jurisdiction. *See Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo.1997). These are matters for the parties to contest and for the jury to decide.

Thus, we hold that a stretch of an irrigation ditch partly owned and maintained by the city, that is an integral part of the city's storm drainage system, is a sanitation facility for the purposes of the CGIA.

### B. Immunity is Waived Under These Facts

■ Having established that the irrigation ditch at issue here is a sanitation facility for the purposes of section 24–10–106(1)(f), we now apply the waiver provision to the facts of this case. Following *Powell*, we must determine if Henry–Hobbs has alleged an injury that resulted from an act or omission of the city that is connected with the purpose of the facility. *Powell*, 48 P.3d at 565. We find that she has.

The city argues that the death did not result from the sanitation facility because the water in which Michael drowned was not the city's water. To support this argument, the city sought to introduce evidence at the *Trinity* hearing that there had been no rainfall near the time of the accident; Henry–Hobbs sought to admit evidence to rebut this. The trial court disallowed evidence of rainfall, ruling that it went to causation rather than the subject-matter jurisdiction inquiry. We agree.

Henry–Hobbs essentially alleges design flaws in the facility. *See id.* at 566 (characterizing allegations of negligent failure to post warning signs and negligently constructing a ditch without adequate means of escape as design flaws). Under this theory, the origin of the water is of no import.

Henry–Hobbs alleges that Michael drowned when he was sucked under the water by an undertow in the spillway of the ditch. She alleges that the design of this spillway, including the four-foot drop and the absence of both a protective cage and legible warning signs, led to Michael's death. The trial court concluded that the spillway in which Michael died was constructed to the city's specifications and was accepted by the city upon completion. Moreover, the spillway was constructed for the purpose of accommodating the increased water flow caused by the storm water runoff. This spillway, then, relates to the purpose of the sanitation facility.

Thus, Henry–Hobbs has shown facts sufficient to establish a waiver of immunity in this case. She has alleged an act or omission relating to the purpose of the facility and the facility is a sanitation facility under the CGIA. Hence, she may proceed with her action against the city, as the trial court previously held. We do not address issues of

negligence or liability in this decision, only the jurisdictional basis for the suit to proceed. See *Swieckowski*, 934 P.2d at 1384. Nor do we hold that all irrigation ditches are sanitation facilities. The facts here show the City of Longmont's lack of immunity because it constructed, operated, and maintained portions of the ditch as part of the municipal sanitation system.

## IV. Conclusion

In sum, we find that an artificial irrigation ditch of which the city is a shareholder and which is an integral part of the city's storm drainage system is a sanitation facility for the purposes of the CGIA. Furthermore, we find that the immunity waiver encompassed in section 24–10–106(1)(f) establishes jurisdiction under the facts of this case. The spillway in which Michael Hobbs drowned was constructed for and adopted by the city as part of the use of the ditch as a sanitation facility and the alleged negligence relates to the design of this spillway. Thus, his death may have resulted from the operation and maintenance of a sanitation facility. The court of appeals' judgment is affirmed.