CITY OF COLORADO SPRINGS, a home rule municipality, Petitioner

v.

Valerie POWELL, a natural parent of decedent; Steven Powell, individually; and James Powell, a minor, by and through his conservator, Mark Elliott.

City of Longmont, Petitioner

v.

Judith Henry–Hobbs, Respondent.

Nos. 05SC743, 05SC746.

Supreme Court of Colorado, En Banc.

April 9, 2007.

462

Patricia K. Kelly, City Attorney/Chief Legal Officer, Shane White, Senior Attorney, Colorado Springs, Colorado, Attorneys for Petitioner City of Colorado Springs.

Hall & Evans, L.L.C., David R. Brougham, Thomas J. Lyons, Denver, Colorado, Attorneys for Petitioner City of Longmont.

Melat, Pressman & Hogbie, LLP, Glenn S. Pressman, P.C., Glenn S. Pressman, Colorado Springs, Colorado, Attorneys for Respondents Valerie Powell, Steven Powell and James Powell.

Karen Colburn, Roger Fraley, Jr., Denver, Colorado, Attorneys for Respondent Judith Henry–Hobbs.

Chief Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in these cases to review the court of appeals' determination that House Bill 03–1288 operates only prospectively. The bill amended the exemption from liability in the Colorado Governmental Immunity Act regarding sanitation facilities of governmental entities. We affirm the court of appeals and hold that House Bill 03–1288 does not apply in determining the rights and liabilities at issue in cases arising before the effective date of the act, July 1, 2003. Specifically, the new law does not apply to the pending litigation brought by Valerie Powell on her own behalf, as well as on behalf of her sons, James Powell and Steven Powell, deceased, against the City of Colorado Springs. Likewise, House Bill 03–1288 does not apply in the wrongful death action brought by Judith Henry–Hobbs against the City of Longmont following the death of her son, Michael Henry.

## I. Facts and Procedural History

On August 4, 1997, twelve-year-old James Powell and five-year-old Steven Powell fell into a storm water drainage ditch, by which they had been playing. While James was able to pull himself from the swollen waters of the ditch, Steven was not; his body was later found downstream. Under similarly tragic circumstances, on August 13, 1997, ten-year-old Michael Henry drowned in a Longmont irrigation ditch while he was tubing in the spillway. The facts of each accident are described in more detail in our earlier opinions, which are cited and discussed later in this opinion.

Valerie Powell ("Powell") filed suit against the City of Colorado Springs and N.S. Properties, owner of the property, asserting negligent operation and maintenance of the ditch and alleging the ditch constituted a dangerous condition. Meanwhile, Judith Henry–Hobbs ("Henry–Hobbs"), mother of Michael Henry, brought a separate wrongful death action against the City of Longmont, which owned shares in the ditch and maintained the spillway pursuant to an agreement with the ditch's owner.

Both the City of Colorado Springs and the City of Longmont ("Petitioners") filed motions to dismiss in these cases, challenging the jurisdiction of the respective courts and claiming immunity under the Colorado Governmental Immunity Act ("CGIA"), sections 24–10–101 to –120, C.R.S. (2001). Powell and Henry–Hobbs, however, each claimed the relevant ditch constituted a "sanitation facility" under section 24–10–106, which waives sovereign immunity for tort claims arising from the operation and maintenance of a public sanitation facility or a dangerous condition of the facility. Both trial courts denied the motions to dismiss, concluding there were sufficient allegations in the complaints to provide the courts with subject matter jurisdiction.

These rulings were affirmed on interlocutory appeal by the court of appeals and again by this court. *Powell v. City of Colorado Springs,* 25 P.3d 1266 (Colo.App.2000), *aff'd City of Colorado Springs v. Powell,* 48 P.3d 561 (Colo.2002) ("*Powell I*"); *Henry–Hobbs v. City of Longmont,* 26 P.3d 533 (Colo.App. 2001), *aff'd City of Longmont v. Henry–Hobbs,* 50 P.3d 906 (Colo.2002) ("*Henry–Hobbs I*"). In *Powell I,* we held that a drainage ditch qualified as a "sanitation facility" under the CGIA. We echoed this ruling two weeks later in *Henry–Hobbs I,* in which we determined that the irrigation ditch at issue constituted a sanitation facility for the purposes of the CGIA because the city used the ditch as part of its storm drainage system. Because the operation of "sanitation facilities" is not accorded protection from governmental immunity under the CGIA, we concluded in both cases the Petitioners were subject to suit.

In response to these two decisions, the General Assembly passed House Bill 03–1288 ("H.B. 1288"), which adds new definitions under the CGIA. *See* ch. 182, § 24–10–103(5.5), 2003 Colo. Sess. Laws, 1343–44. As pertinent here, H.B. 1288 defines "public sanitation facility" as "structures and related apparatus used in the collection, treatment, or disposition of sewage or industrial wastes of a liquid nature that is operated and maintained by a public entity." H.B. 1288, § 5.5. More salient, the legislation lists a number of

items excluded from the definition of "public sanitation facility," including natural watercourses and drainage ditches. This definition of "public sanitation facility" directly countermands the definition supplied in *Powell I* and *Henry–Hobbs I.* By its terms, H.B. 1288 took effect on July 1, 2003. *See* ch. 182, § 24–10–103, 2003 Colo. Sess. Laws, 1344.

Shortly following passage of H.B. 1288, Petitioners filed new motions to dismiss in their respective cases, arguing that the newly-adopted legislation applies retroactively by excluding storm water drainage ditches from the definition of "public sanitation facilities" and therefore bestows immunity on Petitioners. Both trial courts agreed and granted Petitioners' motions. Powell and Henry–Hobbs appealed, and their cases were consolidated before the court of appeals for oral argument. In a published opinion, the court of appeals reversed the trial court decision. *Powell v. City of Colorado Springs,* 131 P.3d 1129 (Colo.App.2005). That day, the same division of the court of appeals issued an opinion concerning the same legal issue in *Henry–Hobbs v. City of Longmont,* No. 03CA2187, slip op. at 1, 2005 WL 2157396 (Colo.App. Sept.8, 2005), relying on the analysis set forth in *Powell* and reaching the same result. We now affirm the court of appeals' conclusion that H.B. 1288 applies only prospectively.

## II. Retroactivity Analysis

Absent legislative intent to the contrary, we presume a statute operates prospectively. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002); *Coffman v. State Farm Mut. Auto. Ins. Co.,* 884 P.2d 275, 279 (Colo. 1994); *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.,* 849 P.2d 6, 11–12 (Colo. 1993). We make this presumption in accordance with statutory and common law guidance mandating that unless intent to the contrary is shown, legislation shall apply only to those transactions occurring after it takes effect. § 2–4–202, C.R.S. (2006); *In re Estate of DeWitt,* 54 P.3d at 854. This presumption is rooted in policy considerations, namely the notion of fair play and the desire to promote stability in the law.

As a corollary, retroactive application of a statute is generally frowned upon by both common law and statute. *Ficarra*, 849 P.2d at 11. A statute is considered retroactive if it applies to transactions that have already occurred or to rights and obligations that existed before its effective date. *Id.* Although disfavored, retroactive changes in the case law are permitted, and the retroactive application of a statute is not necessarily unconstitutional. Only "retrospective" legislation is constitutionally prohibited. Colo. Const. art. II, § 11 (prohibiting the General Assembly from passing *retrospective* legislation) (emphasis added); *People v. D.K.B.*, 843 P.2d 1326, 1332 (Colo.1993).

A statute is retrospective if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *In re Estate of DeWitt*, 54 P.3d at 854 (quoting *Denver S. Park & Pac. Ry. Co. v. Woodward*, 4 Colo. 162, 167 (1878)). This proscription is intended to prevent the unfairness that would otherwise result from changing the consequences of an act after that act has occurred. *Van Sickle v. Boyes*, 797 P.2d 1267, 1271 (Colo.1990).

In assessing a statute under the retrospectivity provision of our constitution, we utilize a two-step inquiry. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 444 (Colo.2000). First, we must determine whether the General Assembly intended the challenged statute to operate retroactively. *Id.* Second, if we ascertain that the General Assembly intended retroactivity, we then determine whether the challenged statute is unconstitutionally retrospective. *Id.*

After reviewing the relevant facts and procedure in the cases now before us, however, we determine that the General Assembly did not intend H.B. 1288 to be applied retroactively. Based on this determination, we need not address whether application of H.B. 1288 to the facts of these two cases would be constitutionally retroactive or impermissibly retrospective.

## III. Legislative Intent

Petitioners argue that H.B. 1288 was not a change to the existing law but merely a clarification of it and, as such, H.B. 1288 may be relied upon to determine what rights and immunities exist under the original act. *See Acad. of Charter Schs. v. Adams County Sch. Dist. No. 12*, 32 P.3d 456, 464 (Colo.2001); *People v. Covington*, 19 P.3d 15, 21 (Colo. 2001); 1A Norman Singer, *Sutherland Statutory Construction*, section 22.30, at 268 (5th ed.1992).

A legislative amendment either clarifies or changes existing law, and we presume that by amending the law the legislature has intended to change it. *Acad. of Charter Schs.*, 32 P.3d at 464; *Corsentino v. Cordova*, 4 P.3d 1082, 1091 (Colo.2000); *Douglas County Bd. of Equalization v. Fid. Castle Pines, Ltd.*, 890 P.2d 119, 125 (Colo. 1995). This presumption can be rebutted, however, by a showing that the legislature meant only to clarify an ambiguity in the statute by amending it. *Acad. of Charter Schs.*, 32 P.3d at 464. To distinguish between a change and a clarification, we employ a three-pronged analysis by looking to the legislative history surrounding the amendment, considering the plain language used by the General Assembly, and assessing whether the provision was ambiguous before it was amended. *Id.* In so doing, we find there is no evidence of legislative intent that H.B. 1288 apply retroactively.

### A. The Statutory Language

Section 1 of H.B. 1288 contains a legislative declaration, relevant portions of which state as follows:

[1](a) The Colorado supreme court has recently decided two cases, *City of Longmont v. Henry–Hobbs*, 50 P.3d 906 (Colo. 2002) and *City of Colorado Springs v. Powell*, 48 P.3d 561 (Colo.2002), in which key terms in the "Colorado Governmental Immunity Act," article 10 of title 24, Colorado Revised Statutes, were interpreted in a manner *that may significantly expand* the potential liability of governmental entities providing utility services to the public.

(b) The state and its political subdivisions provide essential public services and functions, and the increased legal liability *that may result* from the *Henry–Hobbs* and *Powell* decisions poses the danger of disrupting or making prohibitively expensive the provision of such services and functions. (c) As a result of these court decisions, *modifications of, and additions to, the definitions contained in the "Colorado Governmental Immunity Act" are necessary to clarify the intent* of the general assembly in adopting the Act. [2] The general assembly therefore finds it necessary to modify the definitions of "dangerous condition" and "operation" contained in the "Colorado Governmental Immunity Act" and to add new definitions of "maintenance," "public sanitation facility," and "public water facility" to the Act.

(Emphasis added).

Section 2 of H.B. 1288 adds new definitions for "public sanitation facility," "public water facility," and "maintenance," while modifying existing definitions of "operation" and "dangerous condition." And section 3 simply provides that the legislation "shall take effect July 1, 2003."

▬ Just as the court of appeals concluded, we too see no language in the statute that overcomes the presumption that the General Assembly intended the legislation to take prospective effect. As Petitioners emphasize, the legislative declaration does express a desire to "clarify" the intent of the General Assembly in adopting the Act. However, the declaration also refers to the "modifications of, and additions to" the CGIA definitions that are made by the amendment. This language suggests a legislative recognition that the amendment creates substantive changes to the law. In such cases, we must find the legislation operates prospectively unless the intent for retroactivity is clear. *Acad. of Charter Schs.*, 32 P.3d at 466.

Further, H.B. 1288 articulates legislative concern that the *Powell I* and *Henry–Hobbs I* decisions "may significantly expand the potential liability of governmental entities," which "may result" in increased legal liability and disruption of the provision of key governmental services. These phrases, couched in terms of possibilities, are predictions about the broader consequences of the application of the *Powell I* and *Henry–Hobbs I* decisions to future litigation, not about the actual results of these individual cases.

▬ Equally relevant is what the statute does *not* say: nowhere does H.B. 1288 specify that its modifications or additions ought to be applied retroactively. Legislation may only be applied retroactively if the legislature clearly so intends. *Coffman*, 884 P.2d at 279. While express language of retroactive application is not required for this court to find a legislative intent of retroactivity, *Ficarra*, 849 P.2d at 14, certainly the most efficient and obvious manner of communicating such a desire is for the legislature to state its intent that the new law have retroactive application. Accordingly, we consider as one factor in our analysis here the legislature's decision to omit language making such an alleged intent explicit. *See Z.J. Gifts D–2, L.L.C. v. City of Aurora*, 93 P.3d 633, 641–42 (Colo.App.2004) (declining to attribute intent of retroactive application because statutory language did not state amendment was to be applied retroactively).

Taken as a whole, the language of H.B. 1288, on its face, does not suffice to overcome the presumption of prospectivity that we must employ. Under these facts, the mere invocation of the word "clarify" cannot counteract the language in H.B. 1288 that recognizes modifications and additions to the existing statute were necessary, that expresses concern regarding future application of *Powell I* and *Henry–Hobbs I*, and that omits any clear statement of retroactive intent.

### B. Legislative History

The legislative history surrounding H.B. 1288 is similarly unclear as to retroactivity. Accordingly, it does nothing to assist Petitioners in overcoming the presumptive hurdle of prospective application.

▬ Statements made with respect to H.B. 1288 in hearings before both the House and Senate Committees reveal no conclusive intent. *See* Hearings on H.B. 03–1288 before the House Committee on Judiciary, 64th

General Assembly, 1st Session (Feb. 13, 2003); Hearings on H.B. 03–1288 before the Senate Committee on Judiciary, 64th General Assembly, 1st Session (Mar. 5, 2003). As an initial matter, no explicit mention was made regarding the intended application of the bill to the cases before us today. Other statements hinting at intent worked at cross-purposes. On one hand, Representative Matt Smith, one of H.B. 1288's sponsors, specifically referred to what "was originally intended," and he stated that H.B. 1288 does not create governmental immunity but rather defines terms as they were "intended some time ago."[1] Conversely, witness David Brougham testified that the bill seeks to "redefine[ ]" terms "to comport with what the experts say a sanitation facility means...."

The general tenor of the comments, however, offers a small window of insight into the motivation behind the legislation and supports our conclusion that the legislation was exclusively forward-looking. Sponsors and witnesses alike repeatedly articulated their concern that, with the rulings in *Powell I* and *Henry–Hobbs I*, "local governments will face liability or potential liability for every instance where there's drainage," and that the cases "open[ed] up a whole new world of potential liability," which "greatly multiplies the number of instances and the types of situations in which [local governments] would no longer be immune to suits." These comments suggest that passage of H.B. 1288 was intended to address perceived future ills rather than to affect the parties involved in the cases that led to this court's prior rulings.

Powell's and Henry–Hobbs's argument that H.B. 1288 is a change, not a clarification, to existing law is also buttressed by the fact that, even prior to *Powell I*, the court of appeals had issued several opinions interpreting the phrase "sanitation facility" without triggering legislative action. *See Scott v. City of Greeley*, 931 P.2d 525, 528 (Colo.App. 1996) (holding that operation and mainte-

nance of storm sewer was within meaning of "public water facility" or "sanitation facility"); *Smith v. Town of Estes Park*, 944 P.2d 571, 574 (Colo.App.1996) (determining that cross-pan of storm water drainage system was a "sanitation facility" within CGIA); *Burnworth v. Adams County*, 826 P.2d 368, 370 (Colo.App.1991) (ruling storm drainage facility constituted a "sanitation facility" under CGIA).

We regard the General Assembly's decision not to alter the definition of "sanitation facility" following these cases—even though it made several other amendments to the CGIA after these decisions—as evidence of its acquiescence to the judicial construction of the terms in those opinions. *See Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo.1987) ("When a statute is amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged."); *Tompkins v. De-Leon*, 197 Colo. 569, 571, 595 P.2d 242, 243–44 (1979) (holding that where legislature amends statute and does not change section previously interpreted by settled construction, it is presumed the legislature agrees with the judicial construction). Because the General Assembly's failure to address these cases in subsequent amendments weighs in favor of inferring it assented to them, we cannot adopt Petitioners' interpretation of H.B. 1288 as a clarification of existing law.

Ultimately, the legislative history is inconclusive. The legislative declaration characterizes H.B. 1288 as a clarification of existing law, and one sponsor claimed that H.B. 1288 merely codifies the original intention of the 1971 legislature in passing the CGIA. However, other comments throw this claim into doubt. Moreover, the existence of appellate cases interpreting a "sanitation facility" as encompassing a storm drainage facility—and the legislature's inaction in addressing these interpretations—adds to the evidence that Petitioners have failed to meet their burden

---

1. Petitioners imply that the 2003 General Assembly not only knew the intent of the 1971 legislature in passing the CGIA, but that its understanding of the terms at issue aligned with the 1971 interpretation, which renders H.B. 1288 a mere clarification. The court of appeals voiced skepti-

cism that such legislative declarations of prior intent following a significant lapse of time could be relied upon. For our purposes, however, we note that such declarations carry weight but are by no means controlling. *See People v. Holland*, 708 P.2d 119, 120–21 (Colo.1985).

of rebutting the presumption that H.B. 1288 constituted a change to substantive law, rather than a clarification of it.

## C. Ambiguity Prior to the Amendment

Finally, we consider whether the term addressed in H.B. 1288 and at issue here, "sanitation facility," was ambiguous prior to the adoption of H.B. 1288 in order to determine if H.B. 1288 clarifies or changes the CGIA.

As discussed above, we note as an initial matter that the court of appeals interpreted the term "sanitation facility" on several occasions well before we considered the question in *Powell I*. In *Burnworth*, the court of appeals concluded that the sanitation facility exception of the CGIA included the operation and maintenance of a storm drain. 826 P.2d at 370. Later, the court of appeals held that an injury from a storm sewer and an injury from ice accumulation in part of a storm sewer drainage system were within the ambit of the sanitation facility exception. *Scott*, 931 P.2d at 528; *Smith*, 944 P.2d at 574. These decisions, in conjunction with the General Assembly's inaction in addressing the interpretations therein, lead us to the conclusion that there was no ambiguity regarding the definition of "sanitation facility" even before we issued *Powell I*.

But were we to find ambiguity existed following the court of appeals' decisions, certainly that ambiguity was put to rest when we issued *Powell I*. In *Powell I*, we construed the CGIA and the term "sanitation facility" to conclude that a drainage ditch, built by and for the city to accommodate storm water runoff, clearly fits the broad definition of "sanitation facility." 48 P.3d at 565. Our construction of this term rendered it unambiguous, because the decision lent the phrase a defined, plain meaning not reasonably susceptible to different interpretations. *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 599 (Colo.2005). Thus, while the General Assembly was and is free to disagree with and correct our interpretation of this legislative phrase, there can be no doubt that H.B. 1288, directed at responding to our decisions in *Powell I* and *Henry–Hobbs I*, affirmatively changed, rather than

clarified, the settled definition established in those decisions.

## IV. Conclusion

In sum, we hold that Petitioners have not overcome the presumption of prospectivity we must employ in determining whether the General Assembly intended H.B. 1288 to apply retroactively to these cases. Neither the language of the statute, its legislative history, nor the definition of the term in use prior to the adoption of H.B. 1288 supports Petitioners' contention that the General Assembly clearly intended H.B. 1288 to take retroactive effect. Accordingly, we affirm the court of appeals' conclusion that H.B. 1288 operates only prospectively and that the definitions supplied in *Powell I* and *Henry–Hobbs I* must be used to resolve the cases before us.

Justice EID concurs in part and specially concurs in part.

Justice COATS joins in the concurrence in part and the special concurrence in part.

Justice EID, concurring in part and specially concurring in part.

I agree with the majority that there is nothing in the language of H.B. 1288 that overcomes the presumption in favor of prospective application of statutory changes. Maj. op. at 466. For me, the case ends there: H.B. 1288 is prospective in nature and does not apply to pending cases like the one before us. The majority goes on, however, to examine the legislative history surrounding the passage of H.B. 1288 in order to determine if there is anything there "to assist Petitioners in overcoming the presumptive hurdle of prospective application." *Id.* at 466. The majority's analysis suggests that if the Petitioners were able to demonstrate that the legislative history supports retroactive application, they might prevail on the point—despite the statutory language. The majority's approach is problematic, however, because as judges we are tasked with interpreting statutory language, not the views of individual legislators or witnesses. *See, e.g., United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820) ("The intention of the legislature is to be collected from

the words they employ.") (opinion of Marshall, C.J.).

The pitfalls of interpreting legislative history are well illustrated by the majority's opinion today. The majority points to statements of the bill's sponsor, Representative Matt Smith, essentially "claim[ing] that H.B. 1288 merely codifie[d] the original intention of the 1971 legislature in passing the [Colorado Governmental Immunity Act]." Maj. op. at 467. *See also id.* at 466–67 (detailing statements). Representative Smith's statements, according to the majority, would support a finding of retroactivity because they suggest that the legislature was simply restoring the statutory language to what it meant before we intervened with our interpretation of it in *Powell I* and *Henry–Hobbs I. See id.* at 466–67, 468. The majority then points to a statement by David Brougham, a witness before the House Judiciary Committee, in which he describes H.B. 1288 as "redefin[ing]" the statutory language; the majority suggests that his use of the term "redefin[e]" demonstrates that the legislation was understood to be making a change in the law, a factor supporting prospectivity. *Id.* at 467. The majority concludes from these and other passages that the legislative history is at "cross-purposes" and is ultimately "inconclusive." *Id.*

But why make that conclusion? Why wouldn't Representative Smith's statements—statements by the bill's sponsor that are more complete and specific to the point—prevail over a witness' use of the term "redefine"? Indeed, Mr. Brougham's testimony, when read in context, would seem to support rather than undermine Petitioners' retroactivity argument. After all, Mr. Brougham represented one of the Petitioners, the City of Longmont, in *Henry–Hobbs I* and continues that representation before us today. In a passage not identified by the majority, Mr. Brougham testified that H.B. 1288 would take Colorado law "back to square one"—that is, back to Mr. Brougham's view of Colorado law prior to this court's decisions in *Powell I* and *Henry–Hobbs I*. To Mr. Brougham, it was our decisions that changed the law, not H.B. 1288. In the end, this case demonstrates that legislative history raises more interpretive questions than it answers.

Aside from pointing out the perils of interpreting legislative history, I write separately to note that the rationale adopted by the majority today is far narrower than that adopted by the court of appeals below. The court of appeals began by employing the same analysis adopted by the majority today and arrived at the same conclusion—that H.B. 1288 is prospective in operation. However, it then went on to discuss, at length, its concern that any other conclusion would raise "grave constitutional issues" involving separation of powers. *Powell v. City of Colorado Springs*, 131 P.3d 1129, 1134–35 (Colo. App.2005). While the majority does not address this portion of the court of appeals' decision, its silence should be interpreted not as an endorsement of the court of appeals' analysis, but rather as a decision to leave the separation of powers questions for another day. With this understanding, I join the majority's opinion with the exception of Section III B.

I am authorized to state that JUSTICE COATS joins in this opinion concurring in part and specially concurring in part.