QUESTIONS PRESENTED AND CONCLUSIONS Q. #1: Would it be a proper exercise of jurisdiction by theColorado Commissioner of Insurance to apply the bill to thefollowing types of insurance contracts or benefit plans:
 a. An employee welfare benefit plan funded by the employer under the Employee Retirement Security Act of 1974. See 29 U.S.C. § 1144(b)(2)(B); see also Rush Prudential HMO, Inc. v. Moran, 536 U.S. 335 at 374, n. 6 (2002); FMC Corp v. Holliday, 498 U.S. 52, 61 (1990).
 b. A benefit plan purchased, issued, and delivered to an employer outside the state of Colorado though covering employees in the state of Colorado. See C.R.S. § 10-3-903(2)(h).
A. #1a: No, provided the employee welfare benefit plan is fully funded by the employer. Self-insured ERISA plans are not deemed to be insurance companies for which state insurance laws or regulations apply. However, the Commissioner has jurisdiction to impose penalties against insurance companies who issue master policies in this state that fund employee welfare benefit plans for any violations of Colorado insurance law.
A. #1b: No. The Commissioner generally does not have jurisdiction over benefit plans that are delivered to an employer outside the state of Colorado that cover employees in this state. However, the Commissioner has limited jurisdiction, to the extent it is exercised, to ensure that such master policies include mammography benefits commensurate with current Colorado law.
Q. #2: May the prohibitions set forthin C.R.S. § 10-3-1116(2) be applied to insurance policies issuedprior to the effective date of the provision?
A. #2: No. The prohibitions set forth in section 10-3-1116(2) are not retroactive and therefore cannot be applied to insurance policies or the acts of an insurance company prior to August 5, 2008, the effective date of HB 08-1407.
Q: #3: Does C.R.S. § 10-3-1116 prohibit an insurance companyfrom making an initial determination as to an insured'seligibility *Page 3 for benefits and/or from interpreting contractual limitations onbenefits (e.g., whether services are medically necessary or whetherservices are subject to contractual pre-authorizationrequirements)?
 Q. #4: Does C.R.S. § 10-3-1116 preclude an insurance carrier'sinterpretation or application of a policy's contractual provisions,including determination of medical necessity, eligibility ofbenefits, processing of claims for benefits, determinations ofconditions and exclusions and application of the statutory reviewprocesses(i.e., C.R.S. § 10-16-113 and C.R.S. § 113.5)?
 Q: #5: Does the prohibition of a discretionary clause in aninsurance policy under C.R.S. § 10-3-1116 preempt or preclude otherstatutorily required processes and determinations, so as to preventan insurance carrier from being able to decide(or disagree with another's opinion on) matters such as:
 a. Whether services are medically necessary or experimental ( see C.R.S. 10-16-113 and 113.5);
 b. What services may be subject to a pre-authorization requirement (see C.R.S. §§ 10-16-704(14)(a) and 10-16-704-(4));
 c. Reconsideration of a prior denial of a claim based on a request or submission of additional information ( see C.R.S. 10-16-113 and 113.5);
 d. Information required for determination of liability for a claim (see C.R.S. 10-16-106.5)?
A. #3/4/5: No. Section 10-3-1116 does not prohibit an insurance carrier from making initial determinations of eligibility or interpreting contractual limitations, or any act for which an insurance company generally engages in to determine liability of a claim or the processing, denial or approval of claims or benefits of its insureds. Section 10-3-1116 establishes a statutory cause of action for first-party claimant insureds to sue their insurance carriers when an insurer has unreasonably denied or delayed payment of a claim or benefit. The district courts review the insurance carrier's actions under a de novo standard of review. Whether an insurance carrier's actions in the first instance for *Page 4 
delay or denial of a claim were "unreasonable" or "without a reasonable basis" for which liability will attach under section 10-3-1116 will be for the courts to decide based upon the specific facts and circumstances presented.
 DISCUSSION Q. #1a: Would it be a proper exercise of jurisdiction by theColorado Commissioner of Insurance to apply the bill to an employeewelfare benefit plan funded by the employer under the EmployerRetirement Security Act of 1974? See29 U.S.C. § 1144(b)(2)(B); see also Rush Prudential HMO,Inc. v. Moran, 536 U.S. 335 at n. 374 (2002); FMC Corp v.Holliday, 498 U.S. 52, 61 (1990).
No, provided the employee welfare benefit plan is fully funded by the employer. Most private industry employers who establish voluntary health plans for their employees are subject to the provisions of the federal Employer Retirement Income Security Act of 1974 ("ERISA"). ERISA sets forth minimum standards for employee pension and health benefit plans, and establishes certain fiduciary duties and required notices and information to be provided by employers to employees.
Generally, state laws directed toward the regulation of fully-funded ERISA plans are preempted by ERISA.[2] Therefore, health benefits plans that are fully funded by the employer are not deemed to be insurance companies or engaged in the business of insurance for which state regulatory laws apply.[3] Because a fully-funded employee benefit plan is not considered an insurance company or engaged in the business of insurance, the Commissioner does not have regulatory authority over fully-funded ERISA plans, and it would not be a proper exercise of the Commissioner's jurisdiction to apply the fining provisions of HB 08-1407 to such plans or employers.
In cases where the employer has established an employee welfare benefit plan under ERISA, but chooses to provide benefits through the purchase of *Page 5 
insurance, the Commissioner has jurisdiction over the insurance company from whom the insurance was purchased.[4] To the extent an employer purchases the insurance that underwrites the health benefits from a validly licensed insurance company authorized to conduct business in this state, and such master policy[5] was issued for delivery in this state, even if it affects employees of other states, the Commissioner has jurisdiction to apply the fining provisions of HB 08-1407 to those insurance companies for any violations of the Colorado insurance laws.
The regulatory authority exercised by the Commissioner in this instance is over the insurance company underwriting the health benefits of the employee welfare benefit plan and not targeted at the employer or at the administrator of the employee welfare benefit plan itself.[6] This is because state laws that regulate insurance, banking or securities are not preempted by ERISA when insurance is purchased and not self-funded pursuant to the "savings clause" in ERISA.[7] As such, insurance companies may be subject to the fining provisions of HB 08-1407 should the Commissioner determine there have been violations of Colorado insurance law, even if the insurance companies underwrite health benefits for an ERISA plan.
Q. #lb: Would it be a proper exercise of jurisdiction by theColorado Commissioner of Insurance to apply the bill to a benefitplan purchased, issued, and delivered to an employer outside thestate of Colorado though covering employees in the state ofColorado? See C.R.S. § 10-3-903(2)(h).
No, but with one caveat. Section 10-3-903(1) defines the unauthorized transaction of insurance business in Colorado, setting forth the types of activities for which a person must be licensed by the Division of Insurance. Certain exempted acts and activities that are not considered the transaction of insurance business in this state are set forth in the following section.[8] One such exemption is a benefit *Page 6 
plan that is purchased, issued or delivered to an employer outside the state of Colorado but covers residents of Colorado.[9]
However, in order to qualify for such exemption the policy must provide mammography benefits at a level at least as comprehensive as required by 10-16-104(4).[10]
The Commissioner has limited regulatory authority to the extent it is exercised for review of such master policies to ensure that they include the requisite mammography benefits, and to order compliance if such master policies are deficient. The Commissioner does not have any other jurisdiction over the insurance companies who issue such master policies in another state for purposes of imposition of the fining penalties in HB 08-1407.
Q.#2: May the prohibitions set forthin C.R.S. § 10-3-1116(2) be applied to insurance policies issuedprior to the effective date of the provision?
No. The prohibitions in section 10-3-1116(2) cannot be applied retroactively to insurance policies issued prior to August 5, 2008, the effective date of HB 08-1407.
Colorado statutes are presumed to apply prospectively.[11]
Although disfavored, legislation can apply retroactively, meaning it applies to "transactions that have already occurred or rights and obligations that existed before its effective date."[12] To overcome the presumption of prospective application, the legislature's intent that a law applies retroactively must be clearly manifested on the face of the statute or in its legislative history.[13]
In this case, the plain language of section 10-3-1116(2) and legislative history both support the conclusion that the provision was intended to only apply *Page 7 
prospectively. The statute states in relevant part that "an insurance policy, insurance contract, or plan that is issued inthis state . . . shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator . . ." Section 10-3-1116(2) (emphasis added). The present verb tense "is" contemplates the current or future drafting of a substantive term in an insurance contract, rather than any retroactive application of such prohibition in insurance contracts already issued or in effect prior to the date of August 5, 2008.[14]At least three federal district court rulings have ruled similarly.[15]
A review of the legislative history[16] does not reveal any evidence that the General Assembly intended to retroactively apply the provisions of section 10-3-1116(2).[17] Rather the comments focused on the prospective behavior of insurance companies based upon prospective insurance contracts. Since the plain language of section 10-3-1116(2) and the legislative history for HB 08-1407 do not express an intent that the legislation applies retroactively, there is no need to proceed to the *Page 8 
second part of the test.[18] The provisions of section 10-3-1116(2) may not be applied to insurance policies issued prior to August 5, 2008.[19]
 Q: #3: Does C.R.S. § 10-3-1116 prohibit an insurance companyfrom making an initial determination as to an insured's eligibilityfor benefits and/or from interpreting contractual limitations onbenefits (e.g., whether services are medically necessary or whetherservices are subject to contractual pre-authorizationrequirements)?
 Q. #4: Does C.R.S. § 10-3-1116 preclude an insurance carrier'sinterpretation or application of a policy's contractual provision,including determination of medical necessity, eligibility ofbenefits, processing of claims for benefits, determinations ofconditions and exclusions and application of the statutory reviewprocesses(i.e., C.R.S. § 10-16-113 and C.R.S. § 113.5)?
 Q: #5a-5d: Does the prohibition of a discretionary clause in aninsurance policy under C.R.S. § 10-3-1116 preempt or preclude otherstatutorily required processes and determinations, so as to preventan insurance carrier from being able to decide(or disagree with another's opinion on) matter's such as:
 a. Whether services are medically necessary or experimental ( see C.R.S. 10-16-113 and 113.5);
 b. What services may be subject to a pre-authorization requirement (see C.R.S. §§ 10-16-704(14)(a) and 10-16-704(4));
 c. Reconsideration of a prior denial of a claim based on a request or submission of additional information ( see C.R.S. 10-16-113 and 113.5); *Page 9 
 d. Information required for determination of liability for a claim ( see C.R.S. 10-16-106.5)?
The answers to Questions 3-5 are collectively `no'. In order to understand why the answers are `no', one must first understand the cause of action authorized in HB 08-1407 and the legal effect of a prohibition against the use of discretionary clauses in certain insurance contracts. HB 08-1407 enacted sections 10-3-1115 and 1116, which authorizes a first-party claimant[20] to bring a lawsuit against an insurer in district court for the unreasonable delay or denial of a health, life, or disability claim.[21] The cause of action authorizes the recovery of attorney's fees, costs and two times the covered benefit amount if the first-party claimant prevails in the lawsuit.[22]
Courts are required to provide de novo review of the actions or decisions made by an insurer in order to determine if the insurer is liable under section 10-3-1116 for the "unreasonable" delay or denial of a claim.
HB 08-1407 also prohibits the use of discretionary clauses or any other type of provision for health and disability insurance policies.[23] A discretionary clause is generally a provision in an employee welfare plan that reserves discretion to the plan administrator to make determinations of coverage for employees under said plan. The insurance carrier who underwrites the plan then covers and pays benefits according to the determinations made by the plan administrator. It is typical for an employer to hire the same insurance carrier to act as the plan administrator and to underwrite and pay valid claims of the employee welfare plan.
The use of discretionary clauses or other types of provisions reserving discretion to the insurer or plan administrator provides a more deferential standard of review of the insurer's actions. InFirestone Tire and Rubber Co. v. Bruch, the U.S. Supreme Court held that when an employee brings an action under ERISA[24]for review of the denial of a claim or benefit by a plan administrator, the standard of review by the court is de novo unless the plan administrator specifically reserves *Page 10 
discretion; in which case an arbitrary and capricious standard applies. The holding in Firestone applies to both self-funded and insured ERISA plans. The U.S. Supreme Court recently decidedMetropolitan Life Ins. Co. v. Glenn, [25] which reaffirmed the central holding from Firestone, but also held that nothing fromFirestone mandates that ERISA welfare plans include a discretionary clause reserving discretion to a plan administrator for determinations of employee coverage under the insurance contract.
In understanding what a discretionary clause does and the cause of action authorized in HB 08-1407, it becomes evident that a discretionary clause does not alter the ability or discretion of an insurance carrier to make initial determinations of coverage and continue to process claims, which are the essential functions and responsibilities of an insurance carrier. Rather, the decisions and determinations made by an insurance carrier pursuant to or as a result of the statutorily required procedures and requirements will be subject to a different standard of review should the first-party claimant institute a lawsuit under the new cause of action authorized in sections 10-3-1115 and 1116.
Other than the requirement that the insurer not act unreasonably or without a reasonable basis, nothing in the plain language of sections 10-3-1115 and 10-3-1116 prohibits an insurer making determinations regarding coverage or otherwise complying with sections 10-16-106.5, [26] 10-16-113 and 10-16-113.5, [27] or10-16-704(4) and 10-16-705(14)(a).[28] Whether the insurance carrier's actions were "unreasonable" or "without a reasonable basis" for purposes of liability under sections 10-3-1115 and 10-3-1116 will be based upon the facts and circumstances presented to the court, who will review such actions de novo. *Page 11 
Issued this 1st day February, 2010.
 _________________________ JOHN W. SUTHERS Colorado Attorney General

[2] 29 U.S.C. § 1144(a) ("[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.")
[3] 29 U.S.C. § 1144(b)(2)(B) (ERISA states that "neither an employee benefit plan . . . shall be deemed to be an insurance company, or investment company or be engaged in the business of insurance or banking for purpose of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.).
[4] 29 U.S.C. § 1002(1) (stating that ". . . any plan . . . established by an employer or employer organization . . . for the purpose of providing for its participants or beneficiaries, through the purchase of insurance or otherwise . . .").
[5] A master policy is the main insurance policy that covers an entire group of employees and governs the coverage and benefits of those employees, even if such employees are located in other states.
[6] Metropolitan Life Ins. Co. v. Massachusetts Travelers Ins.Co., 471 U.S. 724, 736 (1985) (state insurance laws do not affect the substantive provisions of ERISA but indirectly affect the employee welfare benefit plan with the content of such plan).
[7] 29 U.S.C. § 1144(b)(2)(A) (stating that ERISA does not "exempt or relieve any person from any law of any State which regulates insurance, banking, or securities").
[8] Section 10-3-903(2), C.R.S.
[9] Section 10-3-903(2)(h), C.R.S.
[10] HB 09-1204, signed into law by Governor Ritter on June 1, 2009, amends the mandated provision for mammography benefits by repealing section 10-16-104(4), C.R.S., and sets forth new mandated mammography benefits at section 10-16-104(18)(b)(III). HB 08-1204 also amends section 10-3-903(2)(h) by removing the reference to section 10-16-104(4) and replacing it with the new provision in section 10-16-104(18)(b)(III). The mandated mammography benefits found in section 10-16-104(18)(b)(III) are effective for insurance policies delivered, issued, renewed, or reinstated on or after July 1, 2010.
[11] Section 2-4-202, C.R.S.
[12] Shell Western E P v. Delores County Bd. of Com'rs,948 P.2d 1002, 1011 (Colo. 1997).
[13] City of Colorado Springs v. Powell,156 P.3d 461, 465 (Colo. 2007).
[14] § 2-4-104, C.R.S. (words in the present tense include the future tense); see alsoBrody v. Banking Bd., 528 P.2d 952, 952 (Colo. App. 1974) (present tense "is" refers to the present and future).
[15] See McClenahan v. Metropolitan Life Ins. Co.,2009 WL 1320919 (D.Colo.); James River Ins. Co. v. Rapid Funding,LLC, Slip Copy, 2009 WL 524994 (D.Colo.); Kohut v. HartfordLife Ins. Co., ___ F.Supp.2d ___, 2008 WL 5246163 (D.Colo.);but see Morrissey v. Allstate Ins. Co., Slip Copy,2009 WL 1384099 (D.Colo.) (holding that plaintiffs case could go forward on conduct of insurance company that occurred after August 5, 2008 even though insurance contract was issued prior to that date).
[16] Concerning Strengthening Penalties for the UnreasonableConduct of an Insurance Carrier, and Making an Appropriation inConnection Therewith Hearing on HB 08-1407 Before the HouseBusiness and Labor Committee, 2008 Leg., 66thSess. (Colo. 1999); Concerning StrengtheningPenalties for the Unreasonable Conduct of an Insurance Carrier, andMaking an Appropriation in Connection Therewith Hearing on HB 08-1407 Before the Senate State Affairs Committee, 2008 Leg., 66th Sess. (Colo. 1999).
[17] Justice Eid's dissent in Powell,156 P.3d at 468-469, argues that if there is no retroactive intent on the face of the statute, it is inappropriate for a court to resort to the interpretation of legislative history. The majority, of course, disagreed, and in any event it is not clear that the same limits on the use of extra-textual materials that should apply to judicial statutory interpretation also should apply to our interpretation on behalf of the executive branch. It is not necessary to resolve that interesting question in here, however, because the history and the text are consistent.
[18] See City of Powell, 156 P.3d at 464.
[19] If HB 08-1407 applied retroactively, it would raise a constitutional question. Article II of Section 11 of the Colorado Constitution forbids "retrospective" legislation. Legislation that applies to past actions is unconstitutionally retrospective (as opposed to simply retroactive) if it (1) takes away or impairs a vested right or (2) creates a new obligation, imposes a new duty, or attaches a new disability. City of Golden v. Parker,138 P.3d 285, 290 (Colo. 2006). Because this legislation does not apply to past actions, we need not reach this question.
[20] A "first-party claimant" is "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." See section 10-3-1115(b)(I), C.R.S.
[21] Section 10-3-1116(1) and (3), C.R.S.
[22] Id.
[23] Section 10-3-1116(2), C.R.S. It should be noted that while the prohibition against a discretionary clause applies to only health and disability contracts, courts are required to apply denovo review to the delay or denial of life insurance contracts as well.
[24] This analysis is limited to application of actions brought under 29 U.S.C. § 1132(a)(1)(B) of ERISA.
[25] ___ U.S. ___, 128 S.Ct. 2243 (2008).
[26] This statutory provision is also known as the Prompt Pay Act, which applies to all insurance carriers operating in Colorado, including those who underwrite individual plans, small and large group plans, and HMOs. The Prompt Pay Act sets forth the requirements of insurance carriers to make determinations of liability on claims and for the prompt payment of claims.
[27] Section 10-16-113 sets forth the internal procedures that an insurance carrier must comply with in order to properly deny benefits on the grounds that such procedure or benefit is not medically necessary or experimental, Section 10-16-113.5 sets forth the procedures for an insurance carrier to establish an independent external review of benefits after the initial internal appeals pursuant to section 10-16-113 have been exhausted.
[28] Sections 10-16-704 and 705(14)(a) allow insurance carriers to require preauthorization of procedures or benefits within managed care plans and provide procedures carriers must follow to do so.